IN THE MATTER OF: D. MONTGOMERY, A MINOR FEMALE CHILD; S. MAXWELL, A MINOR FEMALE CHILD; A. MAXWELL, A MINOR FEMALE CHILD; AND D. MAXWELL, A MINOR MALE CHILD

No. 345PA83

(Filed 5 June 1984)

1. **Parent and Child § 1— termination of parental rights—separate finding regarding adequate fulfillment of child's intangible and non-economic needs not required**

The Court of Appeals erred in finding that due process requires a separate and distinct finding regarding the adequate fulfillment of a child's intangible and non-economic needs in termination of parental rights proceedings. The Termination of Parental Rights statute, as drafted, provides an appropriate forum to address the "intangible needs" issue, as well as protects a parent's interests in preserving the family. G.S. 7A-289.34, G.S. 7A-451(14), (15), G.S. 7A-289.29, G.S. 7A-289.32(7), G.S. 7A-289.23, G.S. 7A-289.22(1), (2), and G.S. 7A-289.31(a), (b).

2. **Parent and Child § 1— termination of parental rights—fundamental principles**

The fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody is that the best interest of the child is the polar star. The fact that a parent does provide love, affection and concern, although it may be relevant, should not be determinative, in that the court could still find the child to be neglected within the meaning of our neglect and termination statutes.

3. **Parent and Child § 1— standard of proof in termination of parental rights proceedings**

In the adjudication stage, petitioner must prove by clear, cogent, and convincing evidence the existence of one or more grounds for termination listed in G.S. 7A-289.32. Once the petitioner has proved this ground by this standard, it has met its burden within the statutory scheme of G.S. 7A-289.30(d) and (e) and G.S. 7A-289.31(a). The petitioner having met his burden of proof at the adjudication stage, the court then moves on to the disposition stage, where the court's decision to terminate parental rights is discretionary. G.S. 7A-289.30(e).

4. **Parent and Child § 1— termination of parental rights—sufficiency of evidence**

In a proceeding to terminate parental rights, the evidence was sufficient to support the trial court's finding of neglect, and the appellate court was bound by those findings even though there may have been evidence contra.

5. **Parent and Child § 1— meaning of "cost of care"**

The Court of Appeals misinterpreted the language of G.S. 7A-289.32 in holding that a petitioner must establish the "reasonable needs of the child" and that a finding as to the cost of foster care failed to establish such reasonable needs since "cost of care" refers to the amount it costs the Department of Social Services to care for the child, namely, foster care, and specific findings of fact as to the reasonable needs of the child are not required.

**6. Parent and Child § 1— finding of failure to pay reasonable cost of care for children supported by evidence**

The trial court could properly conclude that the father of the children in a proceeding to terminate parental rights had not paid a reasonable portion of the cost of caring for the children, and that he had the ability to pay where the evidence tended to show that the father paid only $90.00 for the support of his four children over a forty-five week period; his earnings ranged between $100 and $125 per week; and he had enough money to venture $60.00 per week into a hog operation at the time when he knew he had been ordered to pay $30.00 per week for the support of the children.

**7. Parent and Child § 1— termination of parental rights—mental retardation or mental illness—constitutionality of statute**

G.S. 7A-289.32(7), which provides for the termination of parental rights upon the finding that "the parent is incapable as the result of mental retardation or mental illness of providing for the proper care and supervision of the child . . . and that there is a reasonable probability that such incapability will continue throughout the minority of the child," did not deny respondents procedural or substantive due process or equal protection under the law.

WE allowed discretionary review from the Court of Appeals, *Judge Hill,* concurred in by *Judges Johnson* and *Phillips,* which vacated and remanded judgment of *Greene (Edward), Judge,* entered 8 January 1982 in District Court, HARNETT County.

This cause involves proceedings to terminate parental rights of the respondent-appellees, Geraldine Montgomery and David Maxwell, in their four minor children. The appellant, the Harnett County Department of Social Services, hereinafter referred to as petitioner or DSS, filed four separate petitions for termination of the parental rights to each of the four children. For our purposes, we shall treat those four petitions as one. Guardians ad litem were appointed for the minor children and for the parents. At the time of the hearing in the Juvenile Division of the Harnett County District Court, the children were 10, 9, 7 and 5 years of age.

From the evidence presented at the hearing the trial court made certain findings of facts. An order granting the petition to terminate parental rights as to each child was entered, citing as grounds for termination, neglect by the mother and both neglect and a failure to provide a reasonable cost of care by the father.

The facts disclose that respondents Geraldine Montgomery and David Maxwell are the parents of these four minor children. At the time of the birth of the first child, the mother was 16

years of age while the father was about 4 years older than the mother. The parents were not married then and have not since legitimated their relationship. The children lived with the parents until they were removed by DSS in September 1980.

Since 1978, the family has lived in a three-room house with one bathroom, located on the farm where the father was employed. During the period between 12 October 1979 and 14 August 1980, prior to the September 1980 removal of the children, the house was sparsely furnished, having a single bed on which the parents slept and a mattress on the floor on which the four children slept. The trial court found that "[d]espite urging from the Social Worker, and despite the fact that financial resources were available to the parents from the husband's earnings and social services, the parents failed to provide additional beds or otherwise improve the crowded and inadequate living space . . ."

Mr. Maxwell earned approximately $120.00 per week as a welder and general handyman on the farm owned by his employer. Ms. Montgomery tended to the house and children. Testimony also revealed that the mother suffered from mental problems. She often related to others that she believed someone was looking in the windows of her house and also that someone was trying to get inside her mind. She continuously claimed, for a period of about 14 months, that she was pregnant, when in fact she had had a hysterectomy. Psychological evaluations indicated that both the mother and the father were mentally retarded, having scored 55 and 54, respectively, on the Wechsler Adult Intelligence Test.

During the 1979-80 school year, the children of school age had poor attendance records, missing at least 34 days each. Their grades were also unsatisfactory. Subsequent to DSS acquiring custody of the children, their school attendance and performance showed much improvement.

Petitioner first became involved with the family on 16 October 1979 when a social worker visited the home. During the following 10 months this same DSS employee visited the family over ten times, and found on different occasions the mother talking incoherently, the children at home rather than in school, and enough food in the house for one family meal. After April of 1980 following the respondents' separation, the social worker visited the mother and children in the homes of her relatives.

On 5 September 1980, the trial court adjudged the children neglected and granted custody to petitioner. The court found no improvement in the family's situation at either the 6 March 1981 or the 4 September 1981 review hearings. The father failed to comply with the trial court's 6 March 1981 order to pay $30.00 per week for the support of his four children. The cost of care to the DSS was $150.00 per child per month. At the time of the 8 January 1982 hearing to terminate the parental rights, the father had provided only 3 of 45 payments, to wit, $90.00.

At the time of the termination hearing, there was some evidence of progress being made with regard to Ms. Montgomery. The mother was attempting to improve her homemaking skills with the assistance of DSS. She also was receiving counseling and medicine for her mental problems.

Other facts relevant to the specific assignments of error, will be incorporated into the opinion.

*Woodall, McCormick & Felment, P.A. by Edward H. McCormick for petitioner-appellant.*

*O. Henry Willis, Jr. for respondent-appellees.*

*Rufus L. Edmisten, Attorney General, by David R. Minges, Associate Attorney, and Jane Rankin Thompson, Assistant Attorney General appearing as AMICUS CURIAE for the State.*

*Ruff, Bond, Cobb, Wade & McNair by William H. McNair and Moses Luski appearing as AMICUS CURIAE for Mecklenburg County Department of Social Services.*

COPELAND, Justice.

I.

The Court of Appeals, in *In re Montgomery*, 62 N.C. App. 343, 303 S.E. 2d 324 (1983), reversed the trial judge's judgment terminating parental rights on the grounds of neglect pursuant to N.C. Gen. Stat. § 7A-289.32(2). That court held that the clear, cogent, and convincing evidence standard of proof requires the party seeking termination of parental rights for neglect to prove not only that the physical and economic needs of the child are not adequately met, but also that the intangible non-economic needs

of a child are not adequately met. The petitioner argues that the Court of Appeals committed error by engrafting this new "non-economic" or "non-physical indicia" test onto the requirements for establishing grounds for terminating parental rights. For the following reasons, we agree.

This case involves the interpretation of the Termination of Parental Rights Act, Chapter 7A, Article 24B of the General Statutes, specifically N.C. Gen. Stat. § 7A-289.32 which provides in pertinent part:

> *Grounds for terminating parental rights.* — The court may terminate the parental rights upon a finding of one or more of the following:

> (2) The parent has abused or neglected the child. The child shall be deemed to be abused or neglected if the court finds the child to be an abused child within the meaning of G.S. 7A-517(1), or a neglected child within the meaning of G.S. 7A-517(21). . . .

> (4) The child has been placed in the custody of a county department of social services, a licensed child-placing agency, or a child-caring institution, and the parent, for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care for the child. . . .

> (7) That the parent is incapable as a result of mental retardation, mental illness, organic brain syndrome, or any other degenerative mental condition of providing for the proper care and supervision of the child, such that the child is a dependent child within the meaning of G.S. 7A-517(13), and that there is a reasonable probability that such incapability will continue throughout the minority of the child.

The statute referred to in subsection (2) of the above-quoted statute, N.C. Gen. Stat. § 7A-517(21), appears as follows:

> (21) *Neglected Juvenile.* — A juvenile who does not receive proper care, supervision, or discipline from his parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care or other remedial care recognized under State law, or who lives

in an environment injurious to his welfare, or who has been placed for care or adoption in violation of law.

In its opinion, the Court of Appeals reasoned that the North Carolina statutory definition of neglect is "sufficiently broad to allow interpretation by the courts . . ." Although we agree that the appellate courts, in applying our statutes to the particular case being considered, often must construe these broadly worded statutes, we also acknowledge that our courts are restrained by the bounds of legislative intent. *Mazda Motor v. Southwestern Motors*, 296 N.C. 357, 250 S.E. 2d 250 (1979). However, after our careful reading of the statute, we must conclude that the Court of Appeals, in contravention of our Legislature's intent, erroneously elevated the burden of proof required in proceedings terminating parental rights.

[1] The Court of Appeals, in *Montgomery*, prefaced its opinion with a brief summarization of the "due process evolution" in the area of parental rights, particularly highlighting the United States Supreme Court cases of *Stanly v. Illinois*, 405 U.S. 645, 31 L.Ed. 2d 551 (1972) and *Santosky v. Kramer*, 455 U.S. 745, 71 L.Ed. 2d 599 (1982). Those cases stand for the premise that the parents' right to retain custody of their child and to determine the care and supervision suitable for their child, is a "fundamental liberty interest" which warrants due process protection. *Id.*, at 758-59, 71 L.Ed. 2d at 610. Both *Stanly* and *Santosky*, as the Court of Appeals correctly noted, confine their consideration to procedural due process matters. However, the Court of Appeals interpreted *Santosky* as requiring a petitioner to establish that a child's intangible, non-economic needs were not being fulfilled by his or her parents before said parents' parental rights could be terminated. That court opined the following:

Nevertheless, the [United States Supreme] Court appeared to endorse an approach that would take into account more than physical or economic factors; an approach that would reflect some consideration by the trial judge of all the circumstances of the parent-child relationship in each individual case. The [United States Supreme] Court noted that termination proceedings "often required the fact finder to . . . decide issues difficult to prove to a level of absolute certainty, such as lack of parental motive, absence of affection

between parent and child, and failure of parental foresight and progress. *Id.* at 769, 102 S.Ct. 1388, 81 [sic] L.Ed. 2d 599. *Santosky* implicitly demands serious consideration of the unquantifiable attributes of the parent-child relationship that warrant its protected status under the Due Process clause.

*Montgomery* at 348, 303 S.E. 2d at 327.

Certainly neither we nor our learned lawmakers dispute the importance of love, affection and other intangible qualities that exist in the normal familial relationships. In fact the General Assembly has clearly expressed their desire to ensure that children receive that "degree of care which promotes [their] healthy and orderly physical and emotional well-being." N.C. Gen. Stat. § 7A-289.22(1). Section (2) of that statute further articulates that:

> (2) It is the further purpose of this Article to recognize the necessity for any child to have a permanent plan of care at the earliest possible age, while at the same time recognizing the need to protect all children from the *unnecessary severance of a relationship with biological or legal parents.* (Emphasis added.)

The Legislature has properly recognized that in certain situations, where the grounds for termination could be legally established, the best interest of the child, considering the intangibles, indicate that the family unit should not be dissolved.

N.C. Gen. Stat. § 7A-289.31(a) and (b), which governs the disposition stage of a termination proceeding, provide that the trial court may elect not to terminate parental rights if the best interests of the child require such a result:

> (a) Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child *unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.* [Emphasis added.]

> (b) Should the court conclude that irrespective of the existence of one or more circumstances authorizing termination of parental rights, the best interests of the child require that

such rights should not be terminated, the court shall dismiss the petition, but only after setting forth the facts and conclusions upon which such dismissal is based.

In sum, where there is a reasonable hope that the family unit within a reasonable period of time can reunite and provide for the emotional and physical welfare of the child, the trial court is given discretion not to terminate rights.

Furthermore, with respect to termination proceedings, our statutes provide additional procedures, consistent with due process, to protect the various interests of the parties involved. In every contested case, a guardian ad litem must be appointed to represent the "best interest of the child." *See*: N.C. Gen. Stat. § 7A-289.29. In cases such as the one at present, a parent has the right to the representation of an appointed guardian ad litem "where it is alleged that a parent's rights should be terminated pursuant to G.S. 7A-289.32(7) . . ." N.C. Gen. Stat. § 7A-289.23. Also our statutes provide the parent with appointed counsel during the disposition phase, *Id.* and N.C. Gen. Stat. § 7A-451(a)(14) and (15), as well as the right to appeal. N.C. Gen. Stat. § 7A-289.34.

We are satisfied that the Termination of Parental Rights statute as drafted provides an appropriate forum to address the "intangible needs" issue, as well as protects a parent's interest in preserving the family. Thus, the Court of Appeals' expansion of the grounds for terminating parental rights was unnecessary and improper.

We must further hold that the Court of Appeals' determination, that due process requires a separate and distinct finding regarding the adequate fulfillment of a child's intangible and non-economic needs, is not justified. This Court has not found it constitutionally necessary to develop such an additional requirement to justify termination for neglect. In our case of *In re Moore*, 306 N.C. 394, 293 S.E. 2d 127, *reh. denied*, 306 N.C. 565 (1982); *appeal dismissed sub. nom. Moore v. Dept. of Social Services*, --- U.S. ---, 74 L.Ed. 2d 987 (1983), decided subsequent to *Santosky*, we were asked to determine whether the neglect ground for termination, as stated in N.C. Gen. Stat. § 7A-289.32(2), satisified the requirements of substantive due process. This Court in *Moore*

upheld the constitutionality of the definition of neglect without revising the statutory language.

[2] Our discussion would not be complete unless we re-emphasized the fundamental principle underlying North Carolina's approach to controversies involving child neglect and custody, to wit, that the best interest of the child is the polar star. The fact that a parent does provide love, affection and concern, although it may be relevant, should not be determinative, in that the court could still find the child to be neglected within the meaning of our neglect and termination statutes. Where the evidence shows that a parent has failed or is unable to adequately provide for his child's physical and economic needs, whether it be by reason of mental infirmity or by reason of willful conduct on the part of the parent, and it appears that the parent will not or is not able to correct those inadequate conditions within a reasonable time, the court may appropriately conclude that the child is neglected. In determining whether a child is neglected, the determinative factors are the circumstances and conditions surrounding the child, not the fault or culpability of the parent. Therefore, the fact that the parent loves or is concerned about his child will not necessarily prevent the court from making a determination that the child is neglected. As we stated in *Wilson v. Wilson*, 269 N.C. 676, 678, 153 S.E. 2d 349, 351 (1967), "[t]he welfare or best interest of the child is always to be treated as the paramount consideration to which even parental love must yield. . . ."

## II.

We shall combine, for our purposes, the petitioner's next two assignments of error regarding the Court of Appeals' review of the trial judge's findings and conclusions.

[3] The proper evidentiary standard of proof in termination of parental rights proceedings, according to the *Santosky* holding, is clear and convincing evidence. Showing great foresight, the North Carolina General Assembly prior to the *Santosky* decision amended our termination statute to require a similar "clear, cogent, and convincing" standard. *See*: N.C. Gen. Stat. § 7A-289.30(e). It is well established that "clear and convincing" and "clear, cogent, and convincing" describe the same evidentiary standard. *See*: 30 Am. Jur. 2d, Evidence § 1167. This intermediate standard is greater than the preponderance of the

evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases. *Santosky* at 745, 71 L.Ed. 2d at 599. Our termination statute provides for a two-stage termination proceeding. N.C. Gen. Stat. § 7A-289.30, entitled "Adjudication Hearing on Termination," governs the adjudication stage and provides:

> (d) The court shall take the evidence, find the facts, and shall adjudicate the existence or non-existence of any of the circumstances set forth in G.S. § 7A-289.32 which authorizes the termination of parental rights of the respondent.

> (e) All findings of fact shall be based on clear, cogent, and convincing evidence.

N.C. Gen. Stat. § 7A-289.31 governs the disposition stage of a termination proceeding, and provides in pertinent part that:

> (a) Should the court determine that any one or more of the grounds for termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parent with respect to the child unless the court shall further determine that the best interests of the child require that the parental rights of such parent not be terminated.

When read together, we construe these sections to mean that in the adjudication stage, the petitioner must prove by clear, cogent, and convincing evidence the existence of one or more of the grounds for termination listed in N.C. Gen. Stat. § 7A-289.32. Once the petitioner has proven this ground by this standard, it has met its burden within the statutory scheme of N.C. Gen. Stat. § 7A-289.30(d) and (e) and § 7A-289.31(a). The petitioner having met his burden of proof at the adjudication stage, the court then moves on to the disposition stage, where the court's decision to terminate parental rights is discretionary.

[4] In the case *sub judice*, the trial court made certain findings of facts based on the evidence presented. Although the question of the *sufficiency* of the evidence to support the findings may be raised on appeal, *see* N.C. Gen. Stat. § 1A-1, Rule 52 of the Rules of Civil Procedure, our appellate courts are bound by the trial courts' findings of fact where there is some evidence to support those findings, even though the evidence might sustain findings

to the contrary. *Williams v. Pilot Life Ins. Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *see also*: 1 Strong, N.C. Index 2d, Appeal and Error, § 57.3. In cases involving a higher evidentiary standard, such as in the case *sub judice*, we must review the evidence in order to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law. *In re Moore*, at 404, 293 S.E. 2d at 133.

Here, the Court of Appeals vacated the trial judge's order to terminate the respondents' parental rights based upon its determination that there was insufficient evidence of neglect to support the judge's findings and conclusions. After giving careful consideration to the entire record, we hold that there exists substantial evidence in support of the neglect findings and conclusions.

We note at the outset that our appellate courts should refrain from accepting as facts of a case, findings that are not part of the record on appeal. It appears that the opinion of the Court of Appeals stated findings which do not appear in the trial court's findings of fact. These findings are:

> The poverty of the respondent-appellants is at least partially due to a desire to be self-reliant and not dependent on public assistance. Respondent-appellant Maxwell's failed venture into hog farming, while it indicated a lack of business judgment, was nonetheless rooted in a desire to better provide for his family.

> Testimony from respondent-appellant Montgomery, the mother, indicated no inability to properly look to the needs of her children. . . . Her failure to compel their regular attendance at school, which we do not condone, was at least partially attributable to her illness and not due to any failure to recognize the value of education . . .

> The respondent-appellants kept most of the scheduled visits with their children after they were placed in foster care; any failures were due to legitimate transportation problems and were usually accompanied by a long distance telephone call to inform the Department of Social Services of their problem. . . . The children are healthy and emotionally well-adjusted, evidence of the parents' ability to provide

them with adequate physical, emotional and psychological nuturing.

*Montgomery* at 352-3, 303 S.E. 2d at 329.

In summary the trial court found the acts of neglect in this case to include:

1—Failure to send the three school age children to school with resulting poor grades. The children each missed school for over 30 days.

2—Failure to provide beds and adequate living space for the children during the period October 79 to August 80 (prior to removal of the children from the home) even though financial resources were available to the parents.

3—During August of 1980, the parents were separated and were providing no place at all for the children.

4—Prior adjudication of neglect.

5—The mother was unstable, delusional (believed that she could have a baby even though she had had a hysterectomy and believed that someone or something was trying to get inside of her) was nervous, failed to take medicine to control her condition and gets angry at her children when she does not take her medicine and that this condition causes problems between her and her husband when the children lived with them and that she yells at the children because of it.

6—That the parents lacked the ability to care for the children and this inability will continue throughout the minority of the children.

Judge Greene gave patient and careful consideration to the evidence. His observation of the parties and the witnesses provided him with an opportunity to evaluate the situation that cannot be revealed on printed page. Whether these four minor children were inadequately cared for, within the statutory definition of neglect, was a question for the trier of fact, with the burden of proof being upon the petitioner. The pages of testimony supply ample and competent evidence to support the trial court's findings of neglect, and they are binding upon us on appeal, even

though there may be evidence contra. *Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 273 S.E. 2d 268 (1981).

**[5]** The trial court also found as fact that the four children had been placed in the custody of the Harnett County Department of Social Services, and that the father, "for a continuous period of six months next preceding the filing of the petition, has failed to pay a reasonable portion of the cost of care of the [children]." This finding was made with regard to petitioners' attempt to establish the fourth ground of termination for neglect of N.C. Gen. Stat. § 7A-289.32. The Court of Appeals misinterpreted the language of the statute in their holding that a petitioner must establish the "reasonable needs of the child," and that a finding as to the cost of foster care failed to establish such reasonable needs. As we stated in *In re Clark*, 303 N.C. 592, 281 S.E. 2d 47 (1981), "cost of care" refers to the amount it costs the Department of Social Services to care for the child, namely, foster care. Specific findings of fact as to the reasonable needs of the child are not required.

**[6]** The Court of Appeals further determined that the trial judge erroneously concluded that Mr. Maxwell had not paid a reasonable portion of the costs of caring for the children, and that he had the ability to pay. That court reasoned that specific findings with respect to the needs of the children and to the earnings and standard of living of both the child and the parents were necessary. In *Clark* we addressed the issue of "reasonable portion" of the cost of care:

> . . . A parent's *ability to pay* is the controlling characteristic of what is a "reasonable portion" of [the] cost of foster care . . . A parent is required to pay that portion of the cost of foster care . . . that is fair, just, and equitable *based upon the parent's ability or means to pay*. What is within a parent's "ability" to pay or what is within the "means" of a parent to pay is a difficult standard which requires great flexibility in its application. G.S. § 7A-289.32(4) requires a parent to pay a reasonable portion of the child's foster care costs. The requirement applies irrespective of the parent's wealth or poverty. (Emphasis added.)

*Id.,* at 603-604, 281 S.E. 2d at 55.

Here, the father respondent paid ninety dollars for the support of his four children over a forty-five week period. In other words that comes to about fifty cents per week per child. The father testified that his earnings ranged between $100.00 and $125.00 per week, and that he had enough money to venture $60.00 per week into a hog operation at a time when he knew of the $30.00 per week obligation. We believe there was ample evidence from which the trial court could conclude that respondent Maxwell failed to pay a reasonable portion of the costs of care of the children.

## III.

[7]   The petitioner raises for the first time on appeal, the constitutionality of subsection (7) of N.C. Gen. Stat. § 7A-289.32. Because we consider this question important to the public interest, we shall consider the merits of this issue, pursuant to Rule 2 of the Rules of Appellate Procedure.

The statute in question provides for the termination of parental rights upon a finding that "the parent is incapable as a result of mental retardation or mental illness of providing for the proper care and supervision of the child . . . and that there is a reasonable probability that such incapability will continue throughout the minority of the child." N.C. Gen. Stat. § 7A-289.32(7). The respondents appellees argue that this section denies them their due process rights as well as equal protection under the law.

The constitutional analysis employed in *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976) to uphold the constitutionality of our sterilization laws is analogous to the instant case. In *Moore* this court upheld, against due process and equal protection attack, a statutory provision which permitted a court ordered sterilization upon a finding "that because of a physical, mental, or nervous disease or deficiency which is not likely to materially improve, the person would probably be unable to care for a child or children." N.C. Gen. Stat. § 35-43. There, as here, we were concerned with the parents' ability to properly care for their children.

Many parental termination statutes are subject to constitutional scrutiny based on due process grounds. This termination statute requires not only notice and a hearing to the parents, N.C. Gen. Stat. § 7A-289.27 and 30, but it also provides other specific

safeguards such as the right to present witnesses on one's own behalf, and the right to cross examine witnesses. A parent has a right to counsel and to appointed counsel in case of indigency, if not waived by the parent. N.C. Gen. Stat. § 7A-289.27. The Act also provides for the appointment of a guardian ad litem to represent the parent who suffers a diminished mental capacity. We believe the provisions of this statute adequately assure respondents, and those similarly situated, of procedural due process protection.

With regard to substantive due process, Justice Moore succinctly explained that "due process may be characterized as a standard of reasonableness and as such it is a limitation upon the exercise of the police power." *Moore* at 101, 221 S.E. 2d at 311. The State in the legitimate exercise of its police power may, within constitutional limits, do what is necessary to " 'protect or promote the health, morals, order, safety and general welfare of society.' " *Moore* at 101, 221 S.E. 2d at 311, quoting *State v. Ballance,* 229 N.C. 764, 769, 51 S.E. 2d 731, 734 (1949). For a statute to pass as constitutional, it must have a rational relation to the State's interests listed above. Protecting children from parental neglect is a sufficient reason to warrant State intervention in the traditional rights of parents to the care, custody and control of their children. The State has long practiced its role as *parens patriae* in determining what is in the best interest of neglected or abused children. *See*: Thomas, Child Abuse and Neglect, Part I: Historical Overview, Legal Matrix, And Social Perspectives, 50 N.C. L. Rev. 293 at 313 (1972). The courts in weighing the parent's rights against the child's best interest must follow the legislature's mandate that the child's welfare is paramount. The legislature has determined that a parent, because of his mental illness or retardation, may not be able to adequately provide for a child. We believe that termination of parental rights of those mentally ill or retarded parents determined incapable of caring for their child, when coupled with evidence of neglect, is a valid and reasonable exercise of the State's police power.

Respondent-appellees finally assert that this statute violates the equal protection clause of the Fourteenth Amendment. The objective of N.C. Gen. Stat. § 7A-289.32(7) is not to punish a parent for his or her particular condition, but to provide for the welfare of children. "The equal protection clauses of the United

States and North Carolina Constitutions impose upon lawmaking bodies the requirement that any legislative classification 'be based on differences that are reasonably related to the purposes of the Act in which it is found.' " [Citations omitted.] *Moore* at 104, 221 S.E. 2d at 313. The purpose of the statute is to protect and promote the welfare of the child. The legislature has considered the very real possibility that a mentally ill or retarded individual may be unable to handle the responsibility of a child. We find there exists a reasonable relation between the classification perpetuated by subsection seven and the objective of the statute. Many courts in our sister states have held that a statutory scheme providing termination of parental rights on the grounds of mental illness or retardation of parents, does not violate equal protection. Annot., 22 A.L.R. 4th (1983).

We conclude that N.C. Gen. Stat. § 7A-289.32(7), which provides for the termination of parental rights upon a showing that a child's parents are mentally incapable of providing for that child, is not unconstitutional. It does not violate the equal protection clause, nor does it deny due process.

In summary, we must emphasize that it is the child's best interests which is our guiding beacon. Although courts should balance the parents' inherent right to maintain their family unit with the welfare of the minor child, it is the latter that should always prevail, if it is determined that the two interests are conflicting. We conclude that the trial judge abided by this basic principle and adjudicated the proper results, with the exception of his determination of unconstitutionality of subsection seven of N.C. Gen. Stat. § 7A-289.32.

This case is reversed and remanded to the Court of Appeals, with orders that it reinstate the trial court's judgment, except with regard to its order concerning N.C. Gen. Stat. § 7A-289.32(7).

Reversed and remanded.