IN THE MATTER OF: AMELIA LUCILLE GUYNN

No. 9224DC1114

(Filed 21 December 1993)

1. **Parent and Child § 109 (NCI4th)— termination of parental rights—mental illness—inability to care for child**

     The trial court's termination of respondent mother's parental rights on the ground that she is incapable of providing proper care and supervision of her child due to mental illness was supported by clear, cogent and convincing evidence where the evidence tended to show that both parents did not know how to prepare formula or care for the child after the child was born; the mother was hospitalized because of suicidal tendencies; shortly after the mother returned to the home, the child was removed from the home and custody was awarded to DSS because of concern for the child's safety; neither parent interacted with the child during visits with the child; the mother was diagnosed as having adjustment problems, depression, suicidal ideation, and borderline personality disorder; borderline personality disorder is an emotional disorder which has significantly and detrimentally affected her ability to care for her child; this disorder is evidenced by her unstable and intense interpersonal relationships, problems with shoplifting, binge eating, use of alcohol, inappropriate sexual relationships, difficulty in appropriate use of money, drastic mood shifts, inappropriate intense anger, lack of control of anger, and recurrence of suicidal threats and self-mutilating behavior; this illness will continue throughout the child's minority and will prohibit the mother from ever providing a stable home for her child; and the mother will not be able to care for the child even if she is given appropriate help.

     **Am Jur 2d, Parent and Child §§ 7, 28 et seq.**

2. **Parent and Child § 109 (NCI4th)— termination of parental rights—mental illness or retardation—provision of services not condition precedent**

     The DSS is not required to establish that it made diligent efforts to remedy the parents' mental deficiencies and to reunite the family in order to commence a termination of parental

rights proceeding based upon mental illness or retardation. N.C.G.S. § 7A-289.32(7).

**Am Jur 2d, Parent and Child §§ 7, 28 et seq.**

3. **Discovery and Depositions § 55 (NCI4th) — refusal to compel discovery — absence of prejudice**

Respondent father was not prejudiced by the trial court's failure in a termination of parental rights proceeding to compel the guardian ad litem to provide a list of services offered to him where respondent father obtained that information from DSS.

**Am Jur 2d, Depositions and Discovery § 361 et seq.**

Appeal by respondents from judgment entered 4 May 1992 by Judge Alexander Lyerly in Watauga County District Court. Heard in the Court of Appeals 5 October 1993.

On 23 April 1990, the Watauga County Department of Social Services (DSS) filed a petition alleging the dependency of Amelia Lucille Guynn (the minor child). DSS amended the petition on 27 April 1990, alleging that the minor child was a neglected juvenile. After a hearing, on 26 September 1990, the trial court determined that the child was a neglected child. Thereafter on 23 May 1991, DSS filed a petition to terminate the parental rights of Gerald Guynn (the father) and his wife, Tammy Guynn (the mother). The father filed a counterclaim demanding custody of the minor child and the provision of additional services by DSS. Following a special session of juvenile court, the trial court entered an order terminating the parental rights of both respondents, pursuant to N.C. Gen. Stat. § 7A-289.32(7) (Supp. 1992). From this order, respondents appeal.

*Paletta and Hedrick, by Jeffery M. Hedrick, for respondent-appellant, Gerald Guynn.*

*David Allen Gouch, Jr. for respondent-appellant, Tammy Guynn.*

*Eggers, Eggers & Eggers, by Rebecca Eggers-Gryder, for petitioner-appellee Watauga County Department of Social Services.*

*Diane S. Griffin for Guardian Ad Litem.*

McCRODDEN, Judge.

In this appeal, both parents urge reversal of the judgment on several bases. We shall consider the mother's contention (I) that the trial court erred in finding that there was clear, cogent, and convincing evidence that she was incapable of providing proper care and supervision of the child due to her mental illness. Additionally, we shall review the contention of both respondents (II) that the court erred in failing to interpret section 7A-289.32(7) to require, as a condition precedent to termination, that the agency establish diligent efforts to remedy the parents' mental deficiencies and reunite the family before DSS may terminate their parental rights. Finally, our opinion will address the father's argument (III) that the court erred in refusing to compel discovery from the guardian *ad litem*.

I.

[1]  DSS's action to terminate respondents' parental rights requires proof that the parents, because of mental retardation or mental illness, are incapable of providing for the proper care and supervision of the minor child and that there is a reasonable possibility that such incapacity will continue throughout the minority of the child. N.C.G.S. § 7A-289.32(7). N.C. Gen. Stat. § 7A-289.30(e) (1989) requires that the trial court base its findings of fact on "clear, cogent and convincing evidence," a requirement which establishes an intermediate standard of proof, greater than the preponderance of the evidence standard, but less than the requirement of proof beyond a reasonable doubt. *In re Montgomery*, 311 N.C. 101, 109-110, 316 S.E.2d 246, 252 (1984). Once a petitioner has established by clear, cogent, and convincing evidence one of the grounds for termination listed in N.C.G.S. § 7A-289.32, the trial court has the discretion to terminate parental rights. N.C. Gen. Stat. § 7A-289.31(a) (1989); *id.* at 110, 316 S.E.2d at 252. In a termination case in which the appealing party raises questions about the evidence, our task is to review the evidence to determine whether there is clear, cogent, and convincing evidence to support the findings of fact and to decide whether those findings support the conclusions of law. *Id.* at 111, 316 S.E.2d at 253.

Evidence presented at the termination hearing tended to show the following. The minor child was born 6 January 1990 in Boone, North Carolina. DSS became involved with the minor child on 10 January 1990, after a neglect complaint was filed alleging that

IN RE GUYNN

[113 N.C. App. 114 (1993)]

the child was not being fed properly. DSS visited the parents' home about 11:00 a.m. to find the child unattended, crying, and sucking her fingers. DSS found no formula in the house and learned that neither parent had fed the child since 3:00 a.m. When formula was provided to the respondents, neither parent could properly mix it.

The minor child was hospitalized on 22 January 1990 at Watauga County Hospital for failure to thrive because she had lost forty percent of her birth weight. She remained in the hospital until 7 February 1990. The child was diagnosed with a mild form of pyloric stenosis, a condition in which a stomach muscle did not properly function, causing her to vomit. During the child's hospitalization, the hospital staff instructed respondents on parenting skills and observed their interaction with the minor child. The hospital staff observed only marginal bonding between the parents and the minor child, noting that the parents did not provide adequate cuddling, comforting, or eye contact with the child. Instead, they observed the parents watching television.

After being discharged from the hospital, the child remained at the respondents' home until DSS was summoned there because respondents were fighting and the mother was suicidal. The mother was subsequently hospitalized on 27 March 1990, in the psychiatric ward of Cannon Memorial Hospital in Banner Elk, and the parents voluntarily placed the minor child in foster care. Following the mother's release from Cannon Hospital on 9 April 1990, the child was returned to her parents on 12 April 1990. In April 1990, the mother informed DSS that they could "keep the damn[ed] baby," and then on 19 April 1990, the child was removed from respondents' home and custody was awarded to DSS because DSS was concerned for the child's safety.

DSS set up a visitation schedule for the child to visit respondents in their home. When the visits were at the parents' home, they often failed to interact with the child, slept during the visit, and terminated the visit early. Beginning on 6 June 1990, visitation occurred in the office of the guardian ad litem in Boone. Neither respondent asked to visit the child from 26 September 1990 until 3 January 1991, at which time DSS initiated a visit because the child was being moved out of county. The mother had the opportunity to attend the 3 January 1991 visit, but failed to do so. The father visited the child but interacted with her only minimally.

Furthermore, he failed to ask any questions about the child's development or well-being.

Three subsequent visits took place, on 19 March 1991, 1 May 1991, and 17 July 1991. DSS initiated the 19 March visit and both parents attended. During this visit, the parents made no effort to hold the child and again failed to ask questions about their daughter. Respondents requested the 1 May visit, and the father initiated the last visit on 17 July 1991. For the 17 July visit, he agreed to plan the entire visit, i.e., the activities and meals. Nonetheless, he brought no food, water, or diapers for the child and failed to check her diaper throughout the six-hour visit. His interaction with the child was inappropriate in that he carried her everywhere, even though she was able to walk.

During the hearing for termination of respondents' parental rights, the mother was not present on the 12 and 14 November 1992 sessions, claiming she was suffering from stress and anxiety. She later admitted that she had not visited a doctor and chose not to be present at the hearing.

The trial judge made findings and concluded that the mother, due to mental illness, was incapable of providing proper care and supervision of the minor child. She now contests the trial court's findings and conclusions, arguing that there was not clear, cogent, and convincing evidence supporting its determination. We find, however, that there was clear, cogent, and convincing evidence supporting the court's findings. In addition to the overview of evidence presented above, there was further evidence that the mother has been under the care of a psychotherapist since 1986 and has frequently used the emergency services of New River Mental Health. Some of these emergency contacts involved suicide threats. On 27 September 1991, the mother came to New River Mental Health's emergency room, saying that she was upset and drinking again. She complained of difficulty in sleeping, eating, and functioning, and called herself a "timebomb." On 25 October 1991, the mother again came to New River Mental Health and reported that she felt the tug of Satan and needed the child's father to help her. She further reported, "Sometimes I see the devil's face and must tell him to back down."

Following a psychological examination by Warren Johnson, Gail Hawkinson, and Murray Hawkinson of New River Mental Health, the mother was diagnosed as having adjustment problems, depres-

**IN RE GUYNN**

[113 N.C. App. 114 (1993)]

sion, suicidal ideation, and borderline personality disorder. Borderline personality disorder is an emotional illness which has significantly and detrimentally affected her ability to care for her daughter. The disorder was evidenced by her unstable and intense interpersonal relationships, problems with shoplifting, binge eating, use of alcohol, inappropriate sexual relationships, difficulty in appropriate use of her money, drastic mood shifts, inappropriate intense anger, lack of control of anger, and recurrence of suicidal threats and self-mutilating behavior. The illness will continue throughout the child's minority, and as a result, the mother will never be able to provide a stable home for her child. Even if the mother was given appropriate help, she could not care for the child. From this evidence, we conclude that there was clear, cogent, and convincing evidence supporting the court's determination that, as a result of mental illness, the mother is incapable of properly caring for and supervising the child. The trial court did not err in finding a ground, N.C.G.S. § 7A-289.32(7), permitting termination.

## II.

[2] Respondents' parental rights were terminated pursuant to N.C.G.S. § 7A-289.32(7), which provides:

> The court may terminate the parental rights upon a finding of one or more of the following:
>
> . . . .
>
> (7) That the parent is incapable as a result of mental retardation, mental illness, organic brain syndrome, or any other degenerative mental condition of providing for the proper care and supervision of the child, such that the child is a dependent child within the meaning of G.S. 7A-517(13), and that there is a reasonable probability that such incapability will continue throughout the minority of the child.

Our Courts have never decided the question, raised now by the respondents, of whether N.C.G.S. § 7A-289.32(7) requires that DSS provide diligent services as a condition precedent to termination. Unlike N.C.G.S. § 7A-289.32(3) (under which termination on the basis of willful placement of a child in foster care, with no reasonable progress in parenting skills, requires a showing of diligent efforts by DSS), there is no language in section 7A-289.32(7) requiring DSS to provide services to the parents prior to commencing a proceeding for termination. Since section 7A-289.32(7) does not

require DSS to provide services to a parent, we must determine whether we should incorporate a diligent efforts mandate in a statute devoid of such language. Although respondents have offered cogent reasons why it may make sense to require diligent efforts in a termination proceeding based upon mental illness or mental retardation, we find these reasons insufficient to permit us to read such a requirement into a statute that otherwise omits the provision. *See Matter of L. Children*, 499 N.Y.S.2d 587, 593 (Fam. Ct. 1986). We agree with the *Matter of L. Children* Court, which stated that "if due diligence is to be a requirement of [the mental retardation ground for termination], that is a matter for the Legislature, the courts having no right to expand statutory terms." *Id.* at 594.

III.

[3] Finally, we address respondent father's contention that the trial court erred in refusing to compel discovery from the guardian *ad litem*. After the guardian *ad litem* failed to object to discovery requests and respondent father moved to compel their response, the guardian *ad litem* maintained that the requested information was confidential. Respondent father alleges that he was prejudiced by the guardian *ad litem's* refusal to provide a list of services offered to him. We find this argument without merit since respondent father obtained that information from DSS and, therefore, suffered no prejudice.

Although the trial judge may terminate a parent's rights upon a finding of any one of the separately enumerated grounds, the trial judge is never required to terminate a parent's rights even though one or more of the conditions authorizing termination exists. N.C.G.S. § 7A-289.31(a); *In re Becker*, 111 N.C. App. 85, 97, 431 S.E.2d 820, 828 (1993). Since we determine that the court properly concluded that grounds for termination existed, as set forth in N.C.G.S. § 7A-289.32(7), we hold that the court did not abuse its discretion in finding that it was in the best interests of the child to terminate both parents' parental rights.

Accordingly, we affirm the judgment of the trial court.

Affirmed.

Judges Johnson and Cozort concur.