IN THE MATTER OF: M.L. and A.G., Minor Children.
No. COA03-1567
North Carolina Court of Appeals
Filed July 20, 2004
This case not for publication
Cabarrus County, Nos. 02 J 43, 02 J 44.
Kathleen Arundell Widelski, for petitioner-appellee Cabarrus County Department of Social Services.
Susan J. Hall for respondent-appellant.
THORNBURG, Judge.
M.L. was born on 3 February 2000. A.G. was born on 8 July 2001. Respondent is their mother. A.G. weighed 13 pounds, three ounces on 14 January 2002. On 27 February 2002, A.G. was admitted into Northeast Medical Center weighing only 12 pounds, 2 ounces. Additionally, she was apathetic, balding, had a loss of subcutaneous fat and her skin was hanging from the bone. Her hygiene was poor in that she was dirty, had dirt under her fingernails and had diaper rash. She was diagnosed with failure to thrive due to caloric depravation. After being admitted into the hospital, she rapidly gained weight.
On 5 March 2002, the Cabarrus County Department of Social Services ("DSS") filed a petition alleging that M.L. and A.G. wereneglected and dependent juveniles. On 10 June 2002, nunc pro tunc 9 May 2002, the trial court adjudicated the children as neglected and dependent juveniles. The court determined that it was not in the children's best interests to be returned to respondent's care and ordered that DSS not make reasonable efforts to return the children to their home. On 10 September 2002, DSS filed a motion to terminate respondent's parental rights.
On 13 March 2003, hearings were held on the motion to terminate respondent's parental rights. The trial court found that the children were neglected and dependent juveniles. Accordingly, the trial court found that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) and (6) to terminate respondent's parental rights, and that it was in the best interests of the children that respondent's parental rights be terminated. Respondent appeals.
Respondent first argues that the trial court erred in concluding that she neglected her children. Respondent contends that at the time of termination she had visited her children on a consistent basis. During these visitations, respondent argues that she did no harm to the children, did not interfere with their remedial care and that the children were properly clothed and fed. Respondent further argues that the trial court erred in finding that she was incapable of providing for the proper care and supervision of the children. While respondent concedes she is mildly mentally retarded, she argues that she has adequate family support available in raising the children. After careful review of the record, briefs and contentions of the parties, we affirm. N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "[T]he party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997).
In the instant case, the trial court concluded that the children were dependent juveniles, in that respondent was unable to provide appropriate care and supervision for the children. The trial court found that the children were raised in an unsanitary manner, in that the children were often dirty and smelled, A.G. had a very bad diaper rash when she was admitted to the hospital in February 2002 and an inspection of A.G.'s baby bottle showed that the nipple was distorted, macerated and had mold inside it.
The trial court also found that M.L. was not properly cared for or supervised. M.L. was often inappropriately dressed for cold weather, being without shoes on one occasion and without socks, shoes, coat or hat on another. He also was observed to be out of control, with bouts of kicking and screaming. During a home visit, M.L. threw items around the room, including a toy truck that jeopardized his sister's safety. Respondent admitted to being unable to control his behavior. The trial court further found that A.G. was not properly cared for. On 27 February 2002, she had to be admitted to the hospital for failure to thrive due to caloric depravation. Respondent also failed to fill prescriptions needed for A.G.'s care.
The trial court further found as fact that "efforts to return the children to the mother's home would clearly be futile and would be inconsistent with the children's health, safety, and need for a safe permanent home within a reasonable period of time." The court based its findings on evidence that respondent had an IQ of 57, was determined to be mildly mentally retarded, and scored in the 4th percentile or lower in general intelligence ability tests. The court found that there had not been a substantial improvement in respondent's cognitive abilities prior to the court hearing. Due to her mental retardation, respondent would be expected to have difficulties in problem solving. Because of these limitations, respondent would have difficulty comprehending medical details and risks of failing to follow a medical regimen.
The court also made findings which supported a conclusion that respondent continued to be unable to care for her children. The court cited evidence that despite repeated instructions, respondent would bring Doritos and soft drinks to visits with the children, although A.G. was too young to eat solid food. Respondent would also have to be reminded that the children needed clean diapers and would occasionally put the wrong diapers on the wrong child. Respondent did not have a stable home, as she moved back and forth between a sister's and her current boyfriend's residences. Respondent's sister had her own children removed because her home was not a safe environment for her children to live. Accordingly, we conclude that there was clear, cogent and convincing evidence to support the trial court's conclusion that the children were dependent children within the meaning of N.C. Gen. Stat. § 7B-1111(a)(6).
Since grounds exist pursuant to N.C. Gen. Stat. § 7B-1111(a)(6) to support the trial court's order, the remaining ground found by the trial court to support termination need not be reviewed by the Court. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34.
Once the trial court has found that grounds exist to terminate parental rights, "the court shall issue an order terminating the parental rights of such parent with respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C. Gen. Stat. § 7B-1110(a) (2003). The trial court's decision to terminate parental rights at the disposition stage is discretionary. See In re Montgomery, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984).
Here, respondent argues that she loves her children, has social security benefits available to her, has a stable residence and visited the children regularly. Thus, she contends that it was not in the best interests of her children that her rights be terminated. However, while the children were in respondent's care, they were dirty, improperly supervised and A.G.'s life wasendangered. Since being placed in foster care, A.G. has gained weight and is developmentally on target. Considering respondent's history of being unable to care for her children's basic welfare, as well as her cognitive limitations and inability to follow basic instructions on caring for her children, the trial court could properly conclude that termination of respondent's parental rights was in the children's best interests. Accordingly, the order terminating respondent's parental rights is affirmed.
Affirmed.
Judges HUDSON and STEELMAN concur.
Report per Rule 30(e).