IN THE SUPREME COURT OF NORTH CAROLINA

No. 380A19

Filed 14 August 2020

IN THE MATTER OF: J.A.E.W.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered 27 June 2019 by Judge Wes W. Barkley in District Court, Burke County. This matter was calendared in the Supreme Court on 29 July 2020 but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*N. Elise Putnam, and Mona E. Leipold for petitioner-appellee Burke County Department of Social Services.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Gray Wilson and Michael W. Mitchell, for appellee Guardian ad Litem.*

*Robert W. Ewing, for respondent-appellant father.*

EARLS, Justice.

Respondent-father appeals from the trial court's order terminating his parental rights to J.A.E.W. (Jennifer).[1] We affirm.

Jennifer was born in December of 2003. On 19 August 2014, the Burke County Department of Social Services (DSS) obtained non-secure custody of Jennifer and filed a juvenile petition alleging that Jennifer was a neglected and dependent

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

juvenile. The petition alleged that on 9 February 2014, law enforcement officers responded to a residence where Jennifer, Jennifer's half-brother, her maternal grandmother, and her mother were present.[2] The mother and maternal grandmother appeared to be under the influence of an impairing substance, and the maternal grandmother had been involved in a physical altercation with another minor child while in the presence of Jennifer and Jennifer's half-brother. As a result, Jennifer and her half-brother were placed with a relative.

The petition further alleged that on 26 March 2014, the Catawba County Department of Social Services visited the mother's home and found her to be under the influence. On 19 June 2014, the mother was charged with prostitution. On 19 August 2014, law enforcement officers executed a search warrant for the mother's home and discovered the mother had removed Jennifer and her half-brother from the kinship placement. The mother was selling counterfeit heroin, appeared to be impaired, and admitted to using opiates, benzodiazepines, and marijuana. Needles and cocaine were located within reach of the children. At the time Jennifer came into DSS custody, respondent-father was incarcerated and had a projected release date of 2 February 2016.

The trial court held a hearing on the juvenile petition on 25 September 2014. On 20 November 2014, the trial court entered a consolidated adjudication and

---

[2] Jennifer's half-brother is not a subject of this appeal.

disposition order determining Jennifer to be a dependent juvenile. Custody of Jennifer was continued with DSS.

In a permanency planning order entered on 27 August 2015, the trial court found that respondent "writes letters and sends cards" to Jennifer. The permanent plan was reunification with respondent, concurrent with adoption and guardianship. In a permanency planning order entered 28 January 2016, the trial court found that respondent kept in regular contact with DSS through letters.

Following a hearing held on 5 May 2016, the trial court entered a permanency planning order on 19 May 2016. The trial court found that respondent was released from incarceration on 2 February 2016. The day following his release, he provided DSS his contact information and new address. The trial court further found that on 11 April 2016 respondent signed a family case plan and agreed to: (1) obtain and maintain stable housing, (2) obtain and maintain legal employment, (3) refrain from taking part in any illegal activities, (4) remain out of jail or prison, (5) obtain and utilize reliable transportation, and (6) maintain regular and consistent contact with Jennifer. Respondent was authorized two hours per month of supervised visitation with Jennifer. The permanent plan remained reunification with respondent, concurrent with a plan of adoption and guardianship.

On 1 August 2016, DSS filed a motion requesting that all contact and visitation between Jennifer and respondent stop until Jennifer's therapist "recommends that it resumes," citing concerns raised by Jennifer's therapist that respondent had sexually

abused Jennifer. On 25 August 2016, the trial court entered an order finding that the Wilkes County Department of Social Services was conducting an investigation of respondent's alleged sexual abuse of Jennifer, that was expected to be completed in the next sixty days. The trial court suspended visitation and contact between respondent and Jennifer and held that if the allegations were "not substantiated and [Jennifer's] therapist recommends visitation and telephone contact should resume, then visitation will resume as ordered in the previous order."

Prior to the completion of Wilkes County DSS's investigation, the trial court held a hearing on 22 September 2016 and entered a permanency planning order on 18 October 2016. The trial court found that since being released from jail, respondent had been charged with driving while under the influence. He was employed by Tyson Foods and was living with a girlfriend in a friend's home. Although DSS requested his girlfriend's information in order to complete a background check, respondent refused to provide it.

After a hearing held on 15 December 2016, the trial court entered a permanency planning order on 19 January 2017 finding that respondent was not complying with his case plan; a fact that he admitted. He also admitted to living with "people that are inappropriate." The primary permanent plan was changed to adoption. On 11 January 2017, the Wilkes County Department of Social Services closed its investigation of respondent with a determination that the allegations of

abuse were unsubstantiated. Supervised visitation between respondent and Jennifer resumed on 26 January 2017.

Following a hearing held on 9 February 2017, the trial court entered a permanency planning order on 23 March 2017 finding that respondent's employer informed DSS that respondent had been fired from his job on 4 January 2017 for gross misconduct and would not be allowed to return. Respondent last reported that he was living with friends in Wilkes County but had purchased a trailer. However, because respondent failed to provide DSS with the address to either residence, DSS had been unable to verify their safety. The trial court further found that Jennifer's therapist recommended respondent complete a parenting assessment, parenting classes, and therapy on how to parent a child with limited intellectual ability. Respondent refused to complete any of the therapist's recommendations, stating that he had "done enough" to be able to be reunited with Jennifer. The trial court suspended visitations with respondent based on his failure to engage in parenting classes.

Following a 1 June 2017 hearing, the trial court entered a permanency planning order on 24 August 2017 finding that respondent had failed to make progress on his case plan. The permanent plan was changed to a primary plan of adoption and secondary plan of guardianship, and the trial court ceased reunification efforts with respondent.

The trial court held subsequent permanency planning review hearings on 21 September 2017, 12 December 2017, 22 March 2018, and 9 August 2018. Respondent continued to fail to make progress on his case plan. Following the hearing held on 12 December 2017, the trial court entered a permanency planning order on 8 February 2018 allowing respondent to communicate with Jennifer's therapist "about [Jennifer's] needs/wishes." At the permanency planning review hearing held on 22 March 2018, however, the trial court found that respondent had not contacted the therapist. The therapist recommended that there only be phone contact between respondent and Jennifer. In the order entered after the 9 August 2018 hearing, respondent was permitted to have supervised phone calls with Jennifer "as long [as] the contact is therapeutically recommended by the juvenile's therapist."

The trial court held a hearing on 10 January 2019 and entered a permanency planning order on 24 January 2019. The trial court found that respondent reported that he was employed as an electrical apprentice. Although respondent had completed one section of the Triple P online parenting class, he had not completed the in-person course, as had been requested. The trial court further found that respondent failed to have contact with DSS since 30 April 2018. Respondent had been having supervised phone calls with Jennifer, but Jennifer asked for the phone calls to cease in August 2018 "due to her father not understanding that she wants to be adopted."

On 15 March 2019, DSS filed a petition to terminate respondent's parental rights. DSS alleged that respondent had neglected Jennifer and there was a reasonable likelihood that Jennifer would be neglected if placed in respondent's custody, *see* N.C.G.S. § 7B-1111(a)(1) (2019), respondent had willfully left Jennifer in foster care or placement outside the home for more than twelve months without making reasonable progress to correct the conditions that led to her removal, *see* N.C.G.S. § 7B-1111(a)(2) (2019), respondent had for a continuous period of six months preceding the filing of the petition willfully failed to pay a reasonable portion of the cost of care for Jennifer although physically and financially able to do so, *see* N.C.G.S. § 7B-1111(a)(3) (2019), and respondent had willfully abandoned Jennifer, *see* N.C.G.S. § 7B-1111(a)(7) (2019).

Following a hearing held on 13 June 2019, the trial court entered an order on 27 June 2019 concluding that the evidence supported all four grounds alleged in the petition. The trial court also determined that it was in Jennifer's best interests that respondent's parental rights be terminated, and the court terminated his parental rights. *See* N.C.G.S. § 7B-1110(a) (2019).  Respondent appeals.

Although respondent-father's notice of appeal specifies that his appeal had been noted to the Court of Appeals, rather than to this Court, we elect to treat respondent-father's brief as a certiorari petition and to issue a writ of certiorari authorizing review of respondent-father's challenges to the trial court's termination order on the merits given the seriousness of the issues that are

implicated by the trial court's termination order. *In re N.D.A.*, 373 N.C. 71, 73–74, 833 S.E.2d 768, 771 (2019).

On appeal, respondent argues that the trial court erred in adjudicating that grounds existed to terminate his parental rights. Specifically, respondent challenges the trial court's conclusions that grounds existed under N.C.G.S. § 7B-1111(a)(1) and (7) to terminate his parental rights even though he remained in contact with Jennifer when permitted to do so by her therapist; that grounds existed under N.C.G.S. § 7B-1111(a)(2) when he had corrected the conditions that led to Jennifer's removal and his efforts placed him in a position to regain custody of Jennifer; and that grounds existed under N.C.G.S. § 7B-1111(a)(3) to terminate his parental rights when the findings of fact were insufficient to demonstrate that he had the ability to pay for Jennifer's cost of care.

At the adjudicatory stage, the petitioner bears the burden of proving by "clear, cogent, and convincing evidence" the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes. N.C.G.S. § 7B-1109(e), (f) (2019). We review a trial court's adjudication under N.C.G.S. § 7B-1109 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusion of law." *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984) (citing *In re Moore*, 306 N.C. 394, 404, 293 S.E.2d 127, 132 (1982)).

A trial court is authorized to order the termination of parental rights based on an adjudication of one or more statutory grounds. *See In re Moore,* 306 N.C. at 404, 293 S.E.2d at 133 (holding that an appealed order should be affirmed when any of the grounds found by the trial court is supported by findings of fact based on clear, cogent, and convincing evidence). *See also, In re S.E.,* 373 N.C. 360, 367, 838 S.E.2d 328, 333 (2020) (declining to address additional arguments when evidence established the ground of parent's failure to pay reasonable portion of the costs of care). Here we only address the ground of willfully failing to pay a reasonable portion of the cost of care of a juvenile who is in the custody of a county department of social services if the parent is physically and financially able to do so. N.C.G.S. § 7B-1111(a)(3) (2019). The relevant statutory time period for this ground is the six months prior to the filing of the TPR petition. *Id.*

It is undisputed that respondent failed to make any child support payments during the almost five years that Jennifer was in the DSS's custody. He also did not buy Jennifer clothing or other necessities while she was in foster care. Respondent testified that he had steady employment in the year and a half prior to the termination-of-parental-rights hearing, earning between ten and twelve dollars an hour. He further admitted that at times he "had money saved in the bank," and that at the time of the hearing he was "financially able to take care of [Jennifer]." Therefore, clear, cogent, and convincing evidence supports the trial court's conclusion that respondent willfully failed to pay a reasonable portion of Jennifer's cost of care

despite his physical and financial ability to do so. Indeed, "[n]ot only was this ground proven by clear, cogent and convincing evidence, there was no evidence to the contrary." *In re Moore*, 306 N.C. at 405, 293 S.E.2d at 133.

Nevertheless, Respondent contends that the trial court's decision with respect to this ground for termination was erroneous because respondent also testified that he did not earn enough to live on and because the trial court needed to make findings regarding his living expenses before being able to conclude as a factual matter that he had the means and ability to contribute an amount more than zero to his child's cost of care. However, while there must be a finding that the parent has the ability to pay support, *see In re Ballard*, 311 N.C. 708, 716–17, 319 S.E.2d 227, 233 (1984), in the circumstances of this case, the trial court did not need to make findings regarding respondent's own living expenses. It is enough here, when respondent made no payments whatsoever to cover the costs of Jennifer's care, that the trial court found that respondent was employed with some income. Respondent's living expenses might be relevant evidence to be taken into account if he had made some child support payments during the applicable time period and the issue was whether the amount he contributed to the cost of Jennifer's care was reasonable, but here the trial court found that he had income and made no contributions at all. *Cf. In re J.E.M.*, 221 N.C. App. 361, 364, 727 S.E.2d 398, 401 (2012) (quoting *In re Huff*, 140 N.C. App. 288, 293, 536 S.E.2d 838, 842 (2000)) (reaching the same conclusion in analogous circumstances).

Respondent was working in the six months prior to the filing of the petition, earned some income, and testified that he had the financial means to support Jennifer. He was able to pay some amount greater than zero, and it is undisputed that he failed to do so. Therefore, the trial court properly terminated respondent father's rights based on an adjudication under N.C.G.S. § 7B-1111(a)(3) that he willfully failed to pay child support in the six months prior to the filing of the termination-of-parental-rights petition. As respondent does not challenge the trial court's ultimate conclusion that termination of his parental rights to Jennifer is in her best interest, we affirm the trial court's order.

AFFIRMED.