IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-74

No. 344A20

Filed 18 June 2021

IN THE MATTER OF: J.E.E.R.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 16 March 2020 by Judge William B. Davis in District Court, Guilford County. This matter was calendared for argument in the Supreme Court on 22 April 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*

*Ward and Smith, P.A., by Mary V. Cavanagh for appellee Guardian ad litem.*

*Robert W. Ewing for respondent-appellant father.*

BARRINGER, Justice.

Respondent, the biological father of J.E.E.R. (Jane),[1] appeals from the trial court's order terminating his parental rights pursuant to N.C.G.S. § 7B-1111(a)(2)−(3), and (7) (2019). Since we find that the trial court's findings of fact supporting its termination of respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(3) are supported by clear, cogent, and convincing evidence, we affirm.

---

[1] A pseudonym is used to protect the identity of the juvenile and for ease of reading.

## I.    Factual and Procedural Background

Jane was born in 2006. On 8 May 2017, Guilford County Department of Health and Human Services (DHHS) obtained nonsecure custody of Jane and her three siblings[2] and filed a petition alleging Jane to be an abused and neglected juvenile. At that time, DHHS did not have knowledge of respondent's location or contact information. DHHS's petition alleged that on 3 May 2017, it received a report of physical abuse after Jane's brother arrived at school with black eyes and swelling on the left side of his face. After each sibling was interviewed, Jane's brother and sister disclosed that they sustained injuries from their mother and stepfather. Jane denied being physically disciplined during the current school year "but disclosed that she has had marks in the past from being physically disciplined." Jane reported that her mother and stepfather disciplined the children using their hands and objects, such as a toy ukulele and extension cords.

Subsequently, DHHS located respondent in New York. Respondent is listed as the father on Jane's birth certificate. On 27 June 2017, respondent submitted to genetic paternity testing that determined he was Jane's biological father. In an order entered 4 August 2017, the trial court adjudicated Jane to be a neglected juvenile. The trial court ordered respondent to cooperate with an Interstate Compact on the Placement of Children (ICPC) home study, enter a case plan, and cooperate with

---

[2] Jane's siblings are not the subjects of this appeal.

DHHS.[3] The trial court authorized DHHS to allow supervised telephone calls between respondent and Jane for a minimum of one hour per week.

¶ 4 Following a permanency-planning hearing on 25 October 2017, the trial court found that respondent had spoken with Jane by telephone, supervised by her foster parents. Although respondent had been in contact with a DHHS social worker and was cooperative he had not yet entered into a case plan. Respondent reported to a social worker and the trial court that he was planning on moving in with his sister in New York and wanted a home study completed on his sister's home. The trial court set the permanent plan for Jane as reunification with respondent, with a concurrent plan of adoption. The trial court continued to allow supervised telephone calls between respondent and Jane.

¶ 5 Subsequently, the New York Office of Children & Family Services, through an ICPC request, completed a home study of respondent's sister's apartment. By a report dated 1 May 2018, the New York Office of Children & Family Services disapproved of the placement in respondent's sister's home. On 24 May 2018, respondent contacted DHHS and requested that a home study be completed on his mother's home. The home study on his mother's home was conducted and denied.

---

[3] The result of respondent's genetic paternity testing was pending at the time of the adjudication hearing. The trial court's order that respondent cooperate with an ICPC home study, enter into a case plan, and cooperate with DHHS was contingent upon confirmation of respondent's paternity.

¶ 6    In a permanency-planning hearing on 1 August 2018, the trial court found that respondent was not working towards reunification. Respondent had been hostile with a DHHS social worker, and in December 2017, requested that the social worker no longer contact him. On 6 March 2018, respondent contacted a social worker and stated that he wanted Jane to call him the following day, Jane's birthday. Jane called respondent as requested, but respondent did not answer. Jane left a voice mail, but he never returned her phone call. The trial court further found that a DHHS social worker sent respondent a proposed case plan on 31 May 2018 and asked respondent to contact the social worker if he wished to enter into the plan. Despite acknowledging receipt of the proposed case plan on 6 June 2018, respondent did not enter into a case plan with DHHS. The trial court concluded that DHHS should cease reunification efforts with respondent and changed the permanent plan to adoption with a concurrent plan of guardianship. DHHS was ordered to proceed with filing for termination of parental rights within sixty days of the entry of the order.

¶ 7    On 3 October 2018, DHHS filed a petition to terminate respondent's parental rights to Jane. DHHS alleged grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(1)−(3) and (7). Following a hearing on 1 October 2019, at which respondent did not appear, the trial court entered an order on 31 October 2019 concluding that grounds existed to terminate respondent's parental rights in Jane pursuant to N.C.G.S. § 7B-1111(a)(1)–(3) and (7). The trial court then determined that it was in

Jane's best interests that respondent's parental rights be terminated, and it terminated his parental rights. *See* N.C.G.S. § 7B-1110(a) (2019).

On 11 October 2019, respondent filed a "Motion to Re-Appoint Counsel, Motion to Re-Open the Evidence, and Motion for a New Trial." The trial court entered an order on 27 January 2020 granting respondent's motion for a new trial because of concerns that respondent lacked proper notice of the first hearing and without objection from any party. The 31 October 2019 order terminating respondent's parental rights was "stricken and set aside."

Following a termination-of-parental-rights hearing on 18 February 2020, which respondent was present for and participated in, the trial court entered an order on 16 March 2020 concluding that grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(2)–(3), and (7) and determining that it was in Jane's best interests that respondent's parental rights be terminated. *See* N.C.G.S. § 7B-1110(a). Respondent appealed.

## II. Standard of Review

Our Juvenile Code provides for a two-step process for the termination of parental rights—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, 1110 (2019). At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e), (f). If the trial

court finds the existence of one or more grounds to terminate the respondent's parental rights, the matter proceeds to the dispositional stage where the trial court must determine whether terminating the parent's rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

We review a trial court's adjudication under N.C.G.S. § 7B-1111 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019). Unchallenged findings are deemed to be supported by the evidence and are binding on appeal. *In re Z.L.W.*, 372 N.C. 432, 437 (2019).

## III.     Analysis

On appeal, respondent challenges the trial court's determination that grounds existed to terminate his parental rights. Specifically, respondent argues that the findings of fact supporting the trial court's grounds for termination pursuant to N.C.G.S. § 7B-1111(a)(3), and (7) were not supported by clear, cogent, and convincing evidence. Respondent also argues that because the trial court found that respondent had not neglected Jane pursuant to N.C.G.S. § 7B-1111(a)(1), the trial court was precluded from terminating his parental rights pursuant to N.C.G.S. § 7B-1111(a)(2).

### A. Termination of Respondent's Parental Rights Pursuant to N.C.G.S. § 7B-1111(a)(3)

N.C.G.S. § 7B-1111(a)(3) states, in relevant part:

(a)  The court may terminate the parental rights upon a finding of one or more of the following:

. . . .

(3)  The juvenile has been placed in the custody of a county department of social services . . . and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.

¶ 14    The " 'cost of care' refers to the amount it costs the Department of Social Services to care for the child, namely, foster care." *In re Montgomery*, 311 N.C. at 113. "A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay. . . . The requirement applies irrespective of the parent's wealth or poverty." *In re Clark*, 303 N.C. 592, 604 (1981).

¶ 15    The trial court made the following findings of fact, in pertinent part, to support its termination of respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(3):

2.   [Jane] has been in the legal and physical custody of [DHHS] a consolidated county human services agency, pursuant to Court Order continuously since May 8, 2017.

. . . .

5.   The Petition to Terminate Parental Rights in this matter was filed on October 3, 2018. . . . The six-month period applicable to the (a)(3) and (a)(7) claim is April 3, 2018 through October 3, 2018.

. . . .

[10]b. Income – [Respondent] was to obtain and maintain suitable employment and provide proof of income. [Respondent] indicated that he was employed at A&J Grocery at the beginning of 2018 until approximately the fall/winter of 2019. [Respondent] indicated that this employer did not provide paystubs, and that he was being paid under the table four to five days per week, at a payment of approximately $200.00 to $300.00 per week. In the winter of 2018 until the present, [respondent] indicates by his own testimony that he is employed with Postmates delivery service. He schedules his own hours and brings home anywhere between $300.00 to $800.00 per week by direct deposit to his pre-paid card. He also indicated that he has some additional entrepreneurial activities but has given no indication of whether those resulted in any income, and if so, what amounts. As of today's hearing [respondent] has not provided any proof of income. . . .

. . . .

17. . . .

a. [DHHS] has incurred cost in connection with the care of [Jane] on a continuous basis in the six months preceding the filing of this Petition, namely from April 2018 through October 2018 amounting to $6,158.46.

b. [Respondent] has not provided any type or amount of financial support for [Jane] within the six months immediately preceding the filing of this Petition though he stated to [DHHS] he was working. He agreed to provide verification of his income but has failed to do so.

c. [Respondent] has never provided any documentation verifying he is unable to work due to a disability and agreed to provide proof of income. [Respondent] has reported that he is employed and has been since 2018. This demonstrates that [respondent]

has sufficient resources to pay some amount greater than zero.

Respondent does not dispute the trial court's finding of fact that he "has not provided any type or amount of financial support for [Jane] within the six months immediately preceding the filing of this Petition though he stated to [DHHS] he was working." Rather, he argues the trial court's finding of fact that respondent had sufficient resources to pay some amount of financial support greater than zero is not supported by the evidence. Specifically, respondent contends the trial court erred in determining that he had the ability to pay for Jane's cost of care because he was unable to support himself on the income he was receiving.

Here, the relevant six-month time period was 3 April 2018 to 3 October 2018. Respondent testified that he was employed at A&J Grocery from the beginning of 2018 until "[s]omewhere in the fall, going into winter" of 2018 and made between $200.00 and $700.00 per week. At the end of 2018 "going into [20]19," he began working at Postmates delivery service, earning between $300.00 and $800.00 per week. He also testified that he was never unemployed between the job at A&J Grocery and Postmates. Therefore, the trial court's findings that respondent was employed during the relevant time period with some income is supported by clear, cogent, and convincing evidence. *See, e.g., In re T.D.P.*, 164 N.C. App. 287, 290 (2004) (holding there was clear and convincing evidence the respondent had an ability to pay an amount greater than zero where he was earning $0.40 to $1.00 per day while

incarcerated), *aff'd*, 359 N.C. 405 (2005).

As this Court held in *In re J.A.E.W.*, 375 N.C. 112, 118 (2020), where the trial court finds that the respondent has made no contributions to the juvenile's care for the period of six months immediately preceding the filing of the petition and that the respondent had income during this period, the trial court properly terminates respondent's rights based on N.C.G.S. § 7B-1111(a)(3) for willful failure to pay a reasonable portion of the costs of care for the juvenile although physically and financially able to do so. Therefore, the trial court properly terminated respondent's parental rights in Jane pursuant to N.C.G.S. § 7B-1111(a)(3).

## IV. Conclusion

Since only one ground is necessary to support a termination of parental rights, we decline to address respondent's arguments challenging the trial court's finding that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(2) and (7). *See* N.C.G.S. § 7B-1111(a). Respondent does not challenge the trial court's determination that it was in Jane's best interests to terminate his parental rights. Accordingly, we affirm the trial court's order.

AFFIRMED.