IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-73

No. 347A20

Filed 18 June 2021

IN THE MATTER OF: I.J.W.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 9 April 2020 by Judge Mark L. Killian in District Court, Burke County. This matter was calendared for argument in the Supreme Court on 22 April 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Mona E. Leipold for petitioner-appellee Burke County Department of Social Services.*

*Christopher S. Edwards for appellee Guardian ad Litem.*

*Leslie Rawls for respondent-appellant father.*

EARLS, Justice.

¶ 1    Respondent, the biological father of minor child I.J.W. (Ian)[1], appeals from the trial court's order terminating his parental rights. Unchallenged findings of fact based on clear and convincing evidence in the record support the trial court's conclusion that respondent willfully abandoned Ian. Therefore, we affirm the trial

---

[1] A pseudonym is used for ease of reading and to protect the juvenile's identity.

court's adjudication that there are grounds pursuant to N.C.G.S. § 7B-1111(a)(7) to terminate respondent's parental rights as to Ian.

1.  Factual Background

On 6 December 2017, the Burke County Department of Social Services (DSS) obtained nonsecure custody of Ian and filed a petition alleging him to be a neglected and dependent juvenile.[2] According to the petition, on 24 February 2017, DSS received a Child Protective Services ("CPS") report stating that the mother left Ian in a car while she was in a courthouse and he had a seizure. In addition, the mother was using methamphetamines while Ian was in her care, and respondent was aware of the mother's drug use. On 2 March 2017 DSS received the results of Ian's drug screen, showing that he tested positive for methamphetamines. On 27 February 2017 Respondent signed a safety assessment agreeing to be Ian's primary caregiver.

In its subsequent Adjudication/Disposition Order entered 1 March 2018, the trial court found as fact that respondent obtained a domestic violence protective order in effect from 24 March 2017 to 23 March 2018, based on findings that the mother struck Ian leaving marks on two occasions, was using methamphetamines in Ian's presence, and used heroin while being his primary caretaker. The protective order barred contact between respondent and Ian's mother, and required that the maternal

---

[2] DSS filed an amended petition on 12 December 2017 including the results from the parents' 4 and 5 December 2017 drug tests.

grandmother supervise any and all contact between Ian and his mother.

¶ 4      The trial court further found that notwithstanding these restrictions, on 27 November 2017 a DSS social worker met with respondent at his home, where the mother was also living.  Respondent admitted to the social worker that the home did not have electricity, heat, or running water and admitted that he and the mother had recently used methamphetamines. Despite respondent's statements that he understood the terms of the protective order, he still did not comply.  On 4 December 2017 the social worker completed a home visit and observed Ian to have a bruise on his cheek which the mother explained was caused by a fall while he was playing with her.  That day the mother agreed to leave the home and to abide by the terms of the protective order.  On 5 December 2017 the social worker made an unannounced visit and again found the mother to be in the home with Ian present. The mother was arrested for violating the trial court's protective order.  That same day respondent tested positive for methamphetamines and THC metabolite.

¶ 5      A hearing on the juvenile petition was held on 30 January 2018. On 1 March 2018, the trial court entered an order adjudicating Ian to be a neglected and dependent juvenile based on factual stipulations made by the parents. The trial court ordered respondent to comply with an out-of-home family services agreement in which he was required to obtain a substance abuse assessment and follow all recommendations; submit to random drug screens; attend parenting classes and

demonstrate skills learned; obtain a parenting capacity evaluation and follow all recommendations; obtain a psychological assessment and follow all recommendations; obtain a domestic violence offender assessment and follow all recommendations; obtain and maintain stable, appropriate, and independent housing; and obtain and maintain legal, stable, and verifiable income. Respondent was allowed one hour of supervised visitation per week to be supervised by DSS.

¶ 6 Following a 1 March 2018 permanency-planning hearing, the trial court entered an order on 12 April 2018 setting the permanent plan for Ian as reunification with a secondary plan of adoption. Respondent was ordered to comply with the components of his case plan and was allowed two hours of supervised visits every other week.

¶ 7 Respondent initially made progress on his case plan. He completed his substance abuse assessment and began group therapy, completed parenting classes at One Love, completed his psychological assessment on 12 February 2018 which recommended he attend individual counseling, and obtained transportation. Respondent also obtained housing, but it was deemed inappropriate for a minor child.

¶ 8 In a permanency-planning order entered 3 August 2018, the trial court changed the permanent plan to adoption with a secondary plan of reunification. The trial court found that respondent was not making reasonable progress toward reunification and was not actively participating in his case plan. Specifically, the

trial court found that respondent had not begun individual counseling, had tested positive for marijuana on 9 May 2018, and maintained that it was age-appropriate to "whip" Ian for discipline. The court also found that on 18 May 2018, DSS ended respondent's visit with Ian early due to respondent's aggressive behavior and derogatory comments toward the social worker. Respondent became irate, left the building, and threw grass and mud at DSS's door. Respondent did not have any further communication with DSS after that visit. The trial court suspended respondent's visitation and ordered that respondent complete an anger management program as part of his case plan.

¶ 9          Although respondent was ordered to complete an anger management program on 19 July 2018 and ongoing visitation was conditioned upon the father completing the program, he failed to do so. There is nothing in the record to suggest that the trial court's finding of fact that respondent refused to participate in an anger management program is wrong and respondent does not contest it. Moreover, respondent did not return to court to request that his visitation otherwise be reinstated. He was aware of what he needed to do to reinstate visitation with Ian and did nothing. Respondent had not visited Ian since 18 May 2018. The trial court found that respondent withheld his love and affection from Ian by not seeking to re-establish visitation and by failing to send cards, gifts or letters.

¶ 10         Essentially, after the 18 May 2018 incident, respondent was unwilling to work

with DSS. From May 2018 until DSS filed the motion to terminate parental rights almost a year and a half later on 18 October 2019, respondent ceased all engagement with DSS and case plan objectives. He would disengage with social workers when they called, he refused to provide his address, and did not attempt to work any aspect of his case plan.

¶ 11 The trial court entered a permanency planning order on 14 February 2019 placing the child with his maternal grandmother who recently had her foster care license reinstated. The court found that Ian had been having visits with his maternal grandmother, and they had bonded.

¶ 12 On 18 October 2019, DSS filed a motion to terminate respondent's parental rights to Ian.[3] DSS alleged that five grounds existed to terminate respondent's parental rights: (1) neglect, (2) willful failure to make reasonable progress to correct the conditions that led to Ian's removal from the home, (3) willful failure to pay a reasonable portion of the cost of Ian's care, (4) dependency, and (5) willful abandonment. N.C.G.S. § 7B-1111(a)(1)–(3), (6)–(7) (2019). On 6 December 2019, respondent filed an answer in which he admitted the ground of willful failure to pay under N.C.G.S. § 7B-1111(a)(3) but denied the remaining alleged grounds.

¶ 13 Following hearings held 30 January, 31 January and 27 February 2020, the

---

[3] The mother relinquished her parental rights to Ian on 6 May 2019.

trial court entered an order on 9 April 2020 terminating respondent's parental rights. The trial court concluded that all five grounds alleged in the termination motion existed and that termination of respondent's parental rights was in Ian's best interests.[4] Accordingly, the trial court terminated respondent's parental rights to Ian. Respondent appealed.

2. Legal Analysis

¶ 14    Respondent argues generally that the trial court erred by concluding that grounds existed to terminate his parental rights. "Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6 (2019) (quoting N.C.G.S. § 7B-1109(f) (2017)). We review a trial court's adjudication of grounds to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388,

---

[4] Although the trial court found and concluded that grounds existed by clear and convincing evidence pursuant to N.C.G.S. § 7B-1111(a)(2) to terminate respondent's parental rights, the "Order on Adjudication" portion of the termination order does not list N.C.G.S. § 7B-1111(a)(2) as a ground. The parties seem to agree in their briefs, however, that N.C.G.S. § 7B-1111 (a)(2) was a ground on which the court terminated parental rights.

392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 15     Although the trial court determined that five grounds exist to terminate respondent's parental rights, it is well settled that a "finding by the trial court that any one of the grounds for termination enumerated in N.C.G.S. § 7B-1111(a) exists is sufficient to support a termination order." *In re B.O.A.*, 372 N.C. 372, 380 (2019). While the termination order is comprehensive, the clearest ground on the facts of this case and therefore the place we start is that of willful abandonment.

¶ 16     The court must determine that the parent abandoned his child "for at least [the] six consecutive months" before the motion to terminate parental rights was filed. N.C.G.S. § 7B-1111(a)(7). The trial court made numerous findings of fact supported by clear and convincing evidence in the record establishing that respondent father willfully abandoned Ian during the relevant six-month period from 18 April 2019 to 18 October 2019. When the motion to terminate respondent's rights was filed, respondent had not visited Ian in more than a year. Moreover, during that year he refused to work his case plan—failing to take any of the steps required to reunite with Ian. Indeed, during the relevant period he did not make any effort to maintain any sort of parental bond with Ian.

¶ 17     As the trial court found, respondent demonstrated that this was willful

behavior on his part to the extent that once the motion for termination of parental rights was filed in October of 2019, he began to "complete a flurry of services from October 2019 through January 2020." Based on the evidence before it, the trial court concluded that respondent's post-petition behavior demonstrated that he previously had the ability to engage in services but chose not to. However, his later actions do not bar an ultimate finding of willful abandonment because the statute explicitly prescribes the relevant time period for evaluating whether a child has been willfully abandoned and none of respondent's activities in compliance with his case plan, including completing a substance abuse assessment, substance abuse classes and a domestic violence assessment, occurred during the relevant period. *See In re E.B.*, 375 N.C. 310, 318 (2020) ("[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the determinative period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition."). Respondent has not contested any of these findings of fact and therefore they are binding on appeal. *See In re T.N.H.*, 372 N.C. 403, 407 (2019) ("Findings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal."). Taken together, the trial court's factual findings in this case support the conclusion that respondent willfully abandoned Ian for more than six consecutive months preceding the filing of the petition.

Because the ground of willful abandonment is sufficient to support the trial court's order of termination, we need not address respondent's arguments as to the other grounds. Respondent does not challenge the trial court's best interests determination. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

AFFIRMED.