IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-91

No. 348A21

Filed 15 July 2022

IN THE MATTER OF: N.W., J.W., L.W.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 26 May 2021 by Judge William B. Davis in District Court, Guilford County. This matter was calendared in the Supreme Court on 1 July 2022, but was determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Tharrington Smith, LLP, by Jeffrey R. Russell and Evan B. Horwitz, for petitioner-appellant mother.*

*Garron T. Michael, for respondent-appellee father.*

ERVIN, Justice.

¶ 1 Petitioner-mother Kelly N., the mother of N.W., J.W., and L.W., appeals from a trial court order dismissing her petition seeking to have the parental rights of respondent-father Josey W., the children's father, terminated. After careful consideration of petitioner-mother's challenges to the trial court's dismissal order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I.   Background

¶ 2        Petitioner-mother and respondent-father were married in October 2006 and separated in May 2015. All three of the children at issue in this case were born during the marriage.

¶ 3        On 8 April 2016, petitioner-mother applied for an Order of Protection in Kentucky on the grounds that respondent-father had committed acts of physical abuse against her in the past and was currently making threats against her and obtained the entry of an Emergency Protective Order that awarded temporary custody of the children to petitioner-mother and prohibited respondent-father from contacting petitioner-mother and the children. After a hearing held on 21 April 2016, the Kentucky court entered a Domestic Violence Order against respondent-father that prohibited him from committing further acts of abuse and ordered him to refrain from contacting petitioner-mother and the children for a period of one year. Although respondent-father sought appellate review of the protective order, the Kentucky Court of Appeals upheld it on appeal.

¶ 4        While respondent-father's appeal was pending, the parties agreed to the entry of an order in June 2016 modifying the protective order so as to allow respondent-father to have supervised visitation with the children at Sunflower Kids, Inc., a Kentucky childcare center. Subsequently, respondent-father visited with the children between June and October 2016, with these visits having ended as a result

of the fact that respondent-father canceled three of them given his out-of-state work obligations. Although respondent-father filed a motion seeking to have the protective order amended so that he could have telephonic contact with the children while he was out of town, petitioner-mother opposed the proposed modification and it was never approved. As a result, respondent-father has not had any further contact with the children since that time.

¶ 5        In November 2016, the parents agreed to the entry of an order allowing the Kentucky court to appoint "The Office of the Friend of the Court" to provide them with assistance in addressing their disputes concerning custody of and visitation with the children. In light of that agreement, the Kentucky court appointed a Friend of the Court in December 2016 with instructions to conduct a timesharing risk assessment and make recommendations consistent with the best interests of the children. In March 2017, petitioner-mother sought and obtained an extension of the protective order from the Kentucky court until October 2020.

¶ 6        In November 2017, the parents agreed to a custody arrangement as part of a Property Settlement Agreement, which was, in turn, incorporated into a decree dissolving their marriage that was entered on 8 December 2017. In accordance with this agreement and the resulting custody order, petitioner-mother was awarded sole custody of the children, with respondent-father being allowed to seek review of the custody arrangement within one year after the entry of the custody order upon his

successful completion and implementation of the recommendations made by the Friend of the Court and to request the right to visit with and have contact with the children ninety days after his receipt of the Friend of the Court's recommendations. In addition, respondent-father was ordered to continue making monthly child support payments of $1,500 to petitioner-mother by means of a wage assignment process.

¶ 7        In February 2018, respondent-father's father filed a motion seeking grandparent visitation with the children, with respondent-father having submitted an affidavit in support of this request. Petitioner-mother opposed the paternal grandfather's motion and sought to have it dismissed. After giving notice to the Kentucky court of her intent to relocate in July 2018 petitioner-mother moved to North Carolina with the children in August 2018.

¶ 8        In September 2018, respondent-father filed a motion seeking to be allowed to have supervised visitation with the children with the Kentucky court. Petitioner-mother opposed respondent-father's motion and sought to have it dismissed. In reply to petitioner-mother's dismissal motion, respondent-father stated that he did not know petitioner-mother's new address and requested to be provided with that information so that "he c[ould] pursue timeshare in the new jurisdiction." On 31 October 2018 and 16 November 2018, respectively, the Kentucky court declined to exercise jurisdiction over the paternal grandfather's visitation motion and respondent-father's motion for supervised visitation and dismissed those motions on

the grounds that neither the parents nor the children resided in Kentucky at that time.

¶ 9 On 25 February 2020, respondent-father filed a petition seeking to have the Kentucky child custody order registered in Guilford County. On 20 March 2020, petitioner-mother filed a petition seeking to have respondent-father's parental rights in the children terminated. On 7 May 2020, respondent-father filed an answer in which he denied the material allegations contained in the termination petition and moved to dismiss it based upon an alleged jurisdictional defect and the petition's alleged failure to state a claim for which relief could be granted.

¶ 10 On 14 May 2020, petitioner-mother filed a motion seeking leave to amend her termination petition for the purpose of curing the alleged jurisdictional defect. On 15 September 2020, the trial court entered an order granting petitioner-mother's amendment motion and appointing a guardian ad litem for the children.

¶ 11 On 18 September 2020, petitioner-mother filed an amended termination petition in which she alleged that respondent-father's parental rights in the children were subject to termination on the basis of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7) on the grounds that, since October 2016, respondent-father had not had any contact with the children, had failed to maintain a bond with the children, and had failed to send anything to the children or acknowledge their birthdays; that respondent-father had failed to comply with the Friend of the Court's

recommendation that he seek modification of the custody agreement; that respondent-father had not contacted or seen the children since they had relocated to North Carolina; and that respondent-father "ha[d] withheld his love and affection from the juveniles and ha[d] intentionally foregone all parental duties and responsibilities with regard to the juveniles (with the exception of child support, which is paid via wage withholding)" and on the grounds that the termination of his parental rights would be in the children's best interests. In a response to the amended petition filed on 6 October 2020, respondent-father asserted that his failure to communicate or see the children had resulted from compliance with lawful orders of the Kentucky court and that he had paid support for the children each month since 2016.

¶ 12     The issues raised by respondent-mother's termination petition came on for hearing before the trial court on 11 May 2021. On 26 May 2021, the trial court entered an order dismissing the termination petition at the conclusion of petitioner-mother's evidence based upon a determination that petitioner-mother had failed to establish that respondent-father had willfully abandoned the children. Petitioner-mother noted an appeal to this Court from the trial court's dismissal order.

## II.     Analysis

¶ 13     In seeking relief from the dismissal order before this Court, petitioner-mother argues that the trial court erred by determining that respondent-father's parental

rights in the children were not subject to termination on the basis of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7). "Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94 (2020). At the adjudicatory stage, the trial court must "take evidence, find the facts, and [ ] adjudicate the existence or nonexistence of any of the circumstances set forth in [N.C.]G.S. [§] 7B-1111 which authorize the termination of parental rights of the respondent." N.C.G.S. § 7B-1109(e) (2021). "The burden in such proceedings [is] upon the petitioner . . . and all findings of fact shall be based on clear, cogent, and convincing evidence." N.C.G.S. § 7B-1109(f) (2021). "Should the court determine that circumstances authorizing termination of parental rights do not exist, [it] shall dismiss the petition . . . , making appropriate findings of fact and conclusions." N.C.G.S. § 7B-1110(c) (2021).

¶ 14    We review orders entered by the trial court in termination proceedings "to determine whether the findings are supported by clear, cogent and convincing evidence and [whether] the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111 (1984)). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019) (citing *In re Moore*, 306 N.C.

394, 403–04 (1982)). "Unchallenged findings are deemed to be supported by the evidence and are binding on appeal." *In re R.G.L.*, 379 N.C. 452, 2021-NCSC-155, ¶ 12. "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 15    A parent's parental rights in a child are subject to termination pursuant to N.C.G.S. § 7B-1111(a)(7) in the event that the petitioner proves that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C.G.S. § 7B-1111(a)(7) (2021). Abandonment for purposes of N.C.G.S. § 7B-1111(a)(7) "implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re N.D.A.*, 373 N.C. 71, 77 (2019) (quoting *In re Young*, 346 N.C. 244, 251 (1997)). "The willfulness of a parent's actions is a question of fact for the trial court," with " '[i]ntent' and 'wilfullness' [being] mental emotions and attitudes [that are] seldom capable of direct proof" and that "must ordinarily be proven by circumstances from which they may be inferred[.]" *In re K.N.K.*, 374 N.C. 50, 53 (2020) (cleaned up). "[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." *In re N.D.A.*, 373 N.C. at 77 (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018)). As the trial court found in

the dismissal order, petitioner-mother filed her petition seeking to have respondent-father's parental rights in the children terminated on 20 March 2020, so that the determinative six-month period for purposes of this case ran from 20 September 2019 through 20 March 2020.

¶ 16      According to the trial court's findings of fact, respondent-father "paid current support of $1,500.00 a month to [p]etitioner[-mother] through wage withholding." In addition, the trial court found that respondent-father had filed a petition seeking to have the Kentucky custody order registered in North Carolina pursuant to N.C.G.S. § 50A-305(a) on 25 February 2020. Finally, the trial court made numerous findings concerning events that had occurred outside the determinative period, including detailed information relating to the proceedings in which petitioner-mother and respondent-father had been involved in Kentucky, the entry of the Kentucky orders that prohibited respondent-father from contacting petitioner-mother and the children, and respondent-father's compliance with the Friend of the Court's recommendations and attempts to obtain relief from the Kentucky court orders so that he could have contact with the children. *See In re N.D.A.*, 373 N.C. at 77 (stating that "the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions"). Based upon these findings, the trial court stated in Finding of Fact No. 32 that "[r]espondent[-father] has not willfully abandoned the juveniles and that [r]espondent[-father]'s acts and actions

during the six[-]month period prior to the filing of the [p]etition indicate an intent to support the juveniles and seek contact and reunification with the juveniles" before determining in Conclusion of Law No. 3 that "[r]espondent[-father] ha[d] not willfully abandoned the juveniles[.]"

¶ 17        In her initial challenge to the trial court's dismissal order, petitioner-mother argues that the trial court erred in the course of making several findings of fact concerning events that occurred outside the determinative six-month period. First, petitioner-mother contends that the trial court erred by stating in Finding of Fact No. 8 that "[r]espondent[-father] visited regularly with the juveniles at Sunflower Kids"; that he "cancelled three consecutive visits due to having employment outside of the State"; and that "[t]he [c]ourt finds no clear, cogent and convincing evidence as to why the visitation ceased thereafter at Sunflower Kids." In arguing that the trial court had erroneously failed to determine why respondent-father's visits with the children had ended, petitioner-mother asserts that there was "conflicting evidence as to this point" and that the trial court "needed to assess the credibility of the witnesses and resolve the conflict by finding what happened." We do not find this argument to be persuasive.

¶ 18        Although the trial court does have responsibility for evaluating the credibility of the witnesses, weighing the evidence, and determining the relevant facts, *In re R.D.*, 376 N.C. 244, 258 (2020); *see also* N.C.G.S. § 7B-1109(e), its findings of fact must

be based upon clear, cogent, and convincing evidence, N.C.G.S. § 7B-1109(f). At the time that it announced its decision to dismiss petitioner-mother's termination petition, the trial court stated in open court that:

> The evidence about under what circumstances no further visits were scheduled thereafter is the area where there's sort of some mixed evidence and the court finds that there's not sufficient evidence to make a finding by clear, cogent, and convincing evidence to the court's satisfaction of how that came to pass so I'm not ascribing that.

In addition, the trial court stated in Finding of Fact No. 8 that the record contained "no clear, cogent and convincing evidence as to why the visitation ceased." In view of the fact that this Court is not entitled to reweigh the evidence and to make its own findings of fact, *In re R.D.*, 376 N.C. at 258, and the fact that the trial court's findings must rest upon clear, cogent, and convincing evidence, we cannot fault the trial court for failing to make a particular finding of fact based upon evidence that it determined was not clear, cogent, and convincing, since it would have been error for the trial court to have made such a finding, *see* N.C.G.S. § 7B-1109(f).

¶ 19    In addition, petitioner-mother argues that the trial court erred in making Finding of Fact No. 8 because "it does not give a date or a timeframe when the events occurred" and that, in light "of the determinative six-month period, it is important for the trial court to clearly delineate evidence that takes place within and without this period." Although Finding of Fact No. 8 does not specify the times at which the visits in question occurred, the relevant information can be gleaned from an examination

of the trial court's other findings of fact. For example, in Finding of Fact No. 7, the trial court found that respondent-father had been allowed to have supervised contact with the children at Sunflower Kids pursuant to an order modifying the protective order that was entered on 6 June 2016 and that the amended protective order was set to expire on 21 April 2017. As a result of the fact that respondent-father's visits with the children took place in Kentucky pursuant to an order that was to expire in April 2017 and the fact that the trial court stated in unchallenged Finding of Fact No. 23 that petitioner-mother had relocated to North Carolina with the children in August 2018, it is clear that respondent-father's visits with the children did not occur during the determinative six-month period. As a result, we conclude that petitioner-mother's challenges to Finding of Fact No. 8 lack merit.

¶ 20 Next, petitioner-mother argues that the trial court erred by making Finding of Fact Nos. 17 and 21, which discuss the recommendations that the Friend of the Court made and the nature and extent of respondent-father's compliance with those recommendations. Finding of Fact No. 17 states that

> [n]o written report, instructions or recommendations were filed with the Court or provided to the parties by the Friend of the Court. No Court order was filed indicating the steps [r]espondent[-father] needed to take to request contact with the juveniles. The Court finds that the parties were notified verbally of the recommendations; and [p]etitioner[-mother] and [r]espondent[-father] acknowledge being aware of the recommendations.

According to petitioner-mother, the trial court's statement that "[n]o written report, instructions or recommendations were filed with the Court or provided to the parties by the Friend of the Court" lacks clarity given that it fails to specify the identity of the "court" to which the finding refers and that the relevant finding is, "[a]t best," "misleading" given that it uses "the words 'filed' instead of 'provided' and 'parties' instead of 'counsel for both parties," since the relevant Kentucky order provided that the Friend of the Court "shall provide counsel for both parties and the Court a copy of her report." In view of the fact that the clear implication of Finding of Fact No. 17 is that the parents were aware of the nature and extent of the Friend of the Court's recommendations and the fact that their knowledge of these recommendations is undisputed, we are unable to see how the alleged lack of clarity in Finding of Fact No. 17 adversely affected petitioner-mother's chances for a more favorable outcome at the termination hearing. *See In re T.N.H.*, 372 N.C. 403, 407 (2019) (explaining that we only review those findings necessary to support the trial court's determination whether grounds exist to terminate parental rights). As a result, the trial court did not commit prejudicial error in making Finding of Fact No. 18.

¶ 21    In addition, petitioner-mother argues that the trial court erred in making Finding of Fact No. 21, which states that "[r]espondent[-father] completed these recommendations of the Friend of the Court with the goal of reestablishing contact with the juveniles and that his timing in doing so was not to the satisfaction of

[p]etitioner[-mother]." According to petitioner-mother, this "finding is problematic because it does not give a date or a timeframe when the events occurred[,]" with it being "important for the trial court to clearly delineate evidence that takes place within and without [the determinative six-month] period." In addition, petitioner-mother contends that the trial court failed to explain how respondent-father's compliance with the Friend of the Court's recommendations "was done with the goal or intent of reestablishing contact with the juveniles." Once again, we are not persuaded by petitioner-mother's arguments.

¶ 22        In Finding of Fact Nos. 18 through 20, which petitioner-mother has not challenged as lacking in sufficient evidentiary support, the trial court found that, in light of the Friend of the Court's recommendations, respondent-father had submitted to random drug screens from May to July 2016; completed a forty-four hour partner abuse intervention program in July 2018; and obtained a mental health assessment in November 2017. The reference to "these recommendations" in Finding of Fact No. 21 clearly relates to the information set out in Finding of Fact Nos. 18 through 20, each of which specifies the point in time at which respondent-father complied with the relevant recommendation. In addition, it is clear from Finding of Fact No. 16, which petitioner-mother has not challenged as lacking in sufficient evidentiary support, that respondent-father's successful compliance with the Friend of the Court's recommendations was required before he was entitled to seek review of the

Kentucky custody order and to resume having contact with the children. Finally, respondent-father testified that he had complied with the Friend of the Court's recommendation in order to have the ability to see his children. As a result, the trial court did not err in the course of making Finding of Fact No. 21.

¶ 23      Similarly, petitioner-mother contends that the trial court erred in making Finding of Fact No. 22, which states that respondent-father had paid support in the amount of $1,500 each month to petitioner-mother by means of the wage withholding process "at all times since" the Kentucky custody order was entered in December 2017. A careful review of petitioner-mother's brief establishes that there is no dispute that respondent-father paid support during the determinative six-month period, with the uncontested evidence tending to show that respondent-father made every required support payment from 2019 through 2021. Even so, petitioner-mother contends that the trial court's finding that respondent-father had made all required support payments since December 2017 is not supported by the record evidence in light of the fact that respondent-father's support payments had been made through a wage withholding process because of previously difficulty in making the required payments and the fact that respondent-father had been held in contempt for failing to pay child support and non-compliance with other court orders. Given that the evidence upon which petitioner-mother relies in making this argument does not specify when respondent-father had difficulty paying child support, when

respondent-father was found in contempt, or whether respondent-father had been held in contempt for failure to pay child support, the record does not establish that these portions of Finding of Fact No. 22 were made in error. On the other hand, petitioner-mother is correct in pointing out that the record contains no evidence addressing the extent to which respondent-father paid child support in 2018. For that reason, we will disregard Finding of Fact No. 22 in determining whether the trial court's findings support its conclusion that respondent-father's parental rights in the children were not subject to termination on the basis of abandonment pursuant to N.C.G.S. § 7B-1111(a)(7) to the extent that it finds that respondent-father had paid child support in 2018. *See In re L.H.,* 378 N.C. 625, 2021-NCSC-110, ¶ 14 (disregarding factual findings not supported by the record).

¶ 24 After addressing and resolving petitioner-mother's challenges to the trial court's findings of fact, we must now address her argument that the trial court erred in Finding of Fact No. 32 and Conclusion of Law No. 3 by determining that respondent-father did not willfully abandon the children for purposes of N.C.G.S. § 7B-1111(a)(7). According to petitioner-mother, the trial court erred in making this determination because Finding of Fact No. 32 "fails to delineate the determinative six-month period or specifically find the 'acts and actions' [respondent-father] supposedly engaged in." We hold that petitioner-mother's contention to this effect lacks merit.

¶ 25        In support of this particular argument, petitioner-mother evaluates Finding of Fact No. 32 without considering the remainder of the trial court's dismissal order. The trial court determined in Finding of Fact No. 31 that petitioner-mother had filed the termination petition on 20 March 2020 and stated in Finding of Fact No. 32 that it was considering "the six[-]month period prior to the filing of the [p]etition[.]" Although the trial court did not precisely identify the beginning and ending of the determinative six-month period in Finding of Fact No 32, it is evident that the trial court considered the proper timeframe in deciding that respondent-father's parental rights in the children were not subject to termination on the basis of abandonment.

¶ 26        In addition, the trial court's findings clearly reflect that, during the determinative six-month period, respondent-father had paid child support and sought to have the Kentucky custody order registered in North Carolina, with petitioner-mother having failed to contend that the record did not support the trial court's finding that respondent-father engaged in these activities during the determinative six-month period. Instead, petitioner-mother argues that "th[o]se acts or actions are insufficient" to preclude a determination that respondent-father had not willfully abandoned the children, discounting respondent-father's attempt to register the Kentucky custody order in North Carolina on the grounds that respondent-father had failed to seek the right to visit with the children or to have the visitation provisions contained in the Kentucky custody order modified as part of his attempt to have the

custody order registered in North Carolina and discounting respondent-father's payment of child support on the grounds that, since it resulted from wage withholding, those payments were not made voluntarily.

¶ 27 Although the making of child support payments as the result of a wage withholding process and the making of an attempt to register a foreign custody order in a particular state are not, standing alone, definitive indicators of a parent's intent to remain a part of a child's life, the trial court also found that respondent-father had the "intent to support the juveniles and seek contact and reunification with the juveniles." The trial court's finding to this effect is supported by both respondent-father's testimony and the trial court's findings concerning events that occurred outside the determinative sixth-month period that show respondent-father's considerable, albeit unsuccessful, attempts to reestablish contact with the children and to become involved in their lives.

¶ 28 Among other things, respondent-father testified that he did not abandon his children; that his lack of contact with his them was not willful because such contact had been precluded by the Kentucky court orders; that he had done everything that he had been required to do in order to have contact with his children, including paying child support; and that he believed that he was required to register the Kentucky custody order in North Carolina as a precondition for seeking to have it modified. In addition, the trial court's findings show that respondent-father had been prohibited

from contacting petitioner-mother and the children from April 2016 through the date of the filing of the termination petition and that he had been found in contempt and incarcerated as the result of violations of the protective orders that the trial court found to have stemmed from his efforts to have contact with the children. Similarly, the trial court's findings establish that respondent-father had complied with the recommendations of the Friend of the Court in an attempt to reestablish contact with the children and that he had made various filings in Kentucky between April 2016 and November 2018 as part of an unsuccessful effort to obtain the ability to have contact with the children. As part of his last effort to obtain supervised visitation in Kentucky, the trial court found that respondent-father had asked to be provided with petitioner-mother's new address so that he could "pursue a timeshare in the new jurisdiction." Finally, the trial court's unchallenged findings of fact address respondent-father's continued attempts to be involved with the children after the filing of the termination petition, including his decision to relocate to North Carolina in November 2020 and his actions in contacting petitioner-mother for the purpose of inquiring about and seeking to have contact with the children after petitioner-mother unsuccessfully attempted to have the protective order renewed in North Carolina in December 2020.

¶ 29         After carefully reviewing the record, we hold that this evidence and these findings of fact support the trial court's finding that "[r]espondent[-father]'s acts and

actions during the six[-]month period prior to the filing of the [p]etition indicate an intent to support the juveniles and seek contact and reunification with the juveniles" and its determination in Finding of Fact No. 32 and its conclusion in Conclusion of Law No. 3 that "[r]espondent[-father] has not willfully abandoned the juveniles[.]" In view of the fact that the only ground for termination alleged in petitioner-mother's termination petition was willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7) and the fact that the trial court did not err in determining that respondent-father had not willfully abandoned the children, we further hold that the trial court did not err by dismissing petitioner-mother's termination petition. As a result, the trial court's dismissal order is affirmed.

AFFIRMED.