An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-975

Filed 16 June 2026

Durham County, Nos. 25JT000007-310, 25JT000008-310

IN THE MATTER OF: S.M.R.N. & A.N.R.

Appeal by respondent-mother from order entered 27 June 2025 by Judge Kendra Montgomery-Blinn in Durham County District Court. Heard in the Court of Appeals 19 May 2026.

> *Patrick A. Kuchyt for petitioner-appellee Durham County Department of Social Services.*
>
> *Michelle FormyDuval Lynch for appellee Guardian ad Litem.*
>
> *Rebekah W. Davis for respondent-appellant mother.*

FREEMAN, Judge.

Respondent-mother appeals from the trial court's order terminating her parental rights. On appeal, respondent-mother contends there was a lack of clear and convincing evidence for grounds to support the termination of her parental rights and that the trial court abused its discretion in determining that termination was in the best interest of the children. After careful review, we affirm the trial court's order.

## I.    Factual and Procedural Background

Respondent-mother is the biological mother of S.M.R.N. ("Sara") and A.N.R. ("Arya"), who were fifteen and twelve years old respectively at the time of the termination of parental rights hearing.[1]  On 1 September 2021, Granville County Department of Social Services ("Granville County DSS") filed petitions alleging the children were neglected and dependent juveniles and obtained non-secure custody of the children.

The petitions detailed that respondent-mother did not have permanent housing but had been moving between Alamance, Durham, and Granville counties with the children.  She most recently lived with the children in Durham County. Respondent-mother filed a motion to transfer venue to Durham County on 16 November 2021, but the case ultimately remained in Granville County.

Respondent-mother consented to an adjudication of dependency for both children.  In addition, she stipulated to the allegations in the petitions related to dependency, which included that she: "was unable to care for the [children] due to the ongoing instability in housing and unemployment"; lacked an "appropriate alternative childcare arrangement"; and had a history of substance abuse.  The Granville County trial court entered orders adjudicating Sara and Arya dependent on 24 January 2022.  In both orders, the trial court found

---

[1] Pseudonyms are used to protect the identities of the minor children pursuant to N.C. R. App. P. 42(b).

> that the respondent[-]mother has unstable housing and employment, has a reoccurring history of substance abuse, failed to submit to drug screens as required under the safety plan agreement with the Department, the juvenile has numerous unexcused absences from school, and has otherwise violated several safety plans with the Department by not notifying the social worker of where she is living and failing to ensure that the juvenile is enrolled and attending school.

The trial court entered disposition orders on 16 March 2022 and required respondent-mother to: "complete a substance abuse and mental health assessment"; comply with requested random drug screens; attend all medical and educational meetings for the children; and maintain adequate income and housing to support the children. The trial court ordered the children to remain in the custody of Granville County DSS, made reunification the primary plan, and made custody the "concurrent plan." The trial court awarded respondent-mother biweekly visits with the children.

On 6 May 2022, the cases were transferred to Durham County and Durham County Department of Social Services ("Durham County DSS") became involved. The Durham County trial court held a permanency planning hearing on 12 January 2023. In its 17 February 2023 written order, the trial court found that respondent-mother had not engaged in the services ordered by the Granville County trial court and had neither "appropriate housing nor stable income." The trial again ordered respondent-mother to engage in services consistent with the Granville County trial court's order. The trial court made the primary plan guardianship, the secondary plan custody, and the tertiary plan reunification. The trial court ordered that visits be supervised.

The second permanency planning hearing took place on 3 April 2023. By written order entered 23 May 2023, the trial court found that respondent-mother had "minimally participated in court ordered services," had not engaged in mental health or substance abuse treatment, did not have appropriate housing or stable income, and had a positive drug screen. The trial court continued to order respondent-mother to engage in the previously ordered services. The primary and secondary plans remained guardianship and custody with an approved caretaker. The trial court authorized additional phone-call visits on weeks without in-person visitation.

On 3 August 2023, another permanency planning hearing occurred. In its subsequent written order entered 10 October 2023, the trial court found that respondent-mother continued to not comply with the substance abuse, mental treatment, income, or housing requirements as previously ordered. Respondent-mother was unable to provide a sample for a court-ordered drug screen, which the court treated as a positive result. Guardianship and custody with an approved caretaker remained the primary and secondary plans respectively, and the trial court made adoption the tertiary permanent plan. Durham County DSS was relieved of efforts to reunify the children with respondent-mother.

The trial court held another permanency planning hearing on 24 April 2024. In the written order entered 18 July 2024, the trial court found that respondent-mother "somewhat consistent[ly]" participated in outpatient therapy since February 2024 but refused a therapeutic housing program that included substance abuse

assistance. The trial court continued to find that respondent-mother was not in compliance with the housing, income, and substance abuse components of the ordered services. The trial court made adoption the primary plan and guardianship the secondary plan, and it concluded that it was in the "best interest of the children that their permanency be achieved together." The trial court awarded respondent-mother one hour every other month of supervised in-person visitation and a 30-minute supervised phone call at least once per month.

In July 2024, the children were placed in a foster home together. Around this time Sara "discussed not wanting to go back to the uncertainty of knowing where she would be from day to day" and recognized that she would not feel "stable" with respondent-mother. Sara also expressed that "she would agree to adoption if she and her sister can be in the same home."

On 21 October 2024, the trial court held another permanency planning hearing. By written order entered 27 January 2025, the trial court found that respondent-mother continued to not comply with the court-ordered services. The trial court also found that during visitation, respondent-mother told the children about her health issues, which caused them "severe distress and concern for their mother. The [children] are having difficulty concentrating and sleeping due to their concern about their mother." Adoption remained the primary plan, and guardianship remained the secondary plan. The trial court reduced visitation to one hour of supervised virtual visitation every other month.

On 13 and 14 February 2025, Durham County DSS filed petitions to terminate respondent-mother's rights, alleging that the children were neglected, dependent, and that respondent-mother had willfully left the children in foster care for more than twelve months without making reasonable progress on correcting the conditions that led the removal of the children pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6).

In a report dated 4 April 2025, the children's Guardian ad Litem ("GAL") stated that both Sara and Arya expressed they "would not consent to an adoption." However, the GAL further reported that Sara "has expressed that she would have to consent to placement with [Arya]." Further, Arya "admitted that she did not like talking about the future due to uncertainty. This GAL sees potential for a different conversation if [Arya] addressed her anxiety about the future."

The termination of parental rights hearing occurred on 21 April 2025. The court took judicial notice of the initial adjudication.

During the adjudication portion of the hearing, a Durham County DSS social worker testified about the case. At the time of removal, Durham County DSS had made referrals to respondent-mother for the ordered services. The social worker testified that respondent-mother had "periodically but not consistent[ly]" come to DSS for treatment referrals, and that she did not want to "work on" her mental health. Respondent-mother had a positive drug screen following the 21 October 2024 permanency planning hearing and had not attended several other requested screens; however, respondent-mother had a negative drug screen on the date of the

termination hearing. Respondent-mother was making "very little progress" in obtaining stable housing and her income was inadequate for her to seek housing.

The social worker further testified that there were instances during visitation where she had to stop respondent-mother "because she wanted to talk about someone in the family having a fight, having some difficulties" which were inappropriate for the children "to hear or be a part of." On one occasion respondent-mother appeared to be "pitting" the children against herself. The social worker testified that the children expressed that they "wish[ed] their mother wouldn't do something—that they wish[ed] she wouldn't tell them stuff," and they wished that respondent-mother would take better care of her health.

The social worker testified that "there has been very little compliance with court ordered services" and "no insights on [respondent-mother's] mental health and her substance abuse. . . ." Respondent-mother's health treatment ended because the therapist "had difficulty getting her engaged" in the treatment. Respondent-mother attended one educational meeting "about the children not being in school or missing several days," but interrupted the meeting and "kept stating that was not true."

The trial court read the petitions filed by Granville County DSS and the order entered by the Granville County trial court over respondent-mother's objection. The trial court read the findings from the prior adjudication and stated that the parties "[s]tipulated to dependency and then [the Granville County trial court] found dependency and neglect."

Respondent-mother testified that she had been unemployed due to her medical issues, and she maintained that she had not attended scheduled follow-up appointments. Respondent-mother testified that she earned income from helping a friend by doing things like "taking pictures" or "cleaning her house." Respondent-mother was trying to obtain Social Security disability with the aid of legal counsel but had been previously denied five times. Respondent-mother testified she had been taking Suboxone for a long time and that she had not had the opportunity to explain why some of the drug screenings were positive.

Respondent-mother testified that it was difficult to get to appointments in Durham County due to where she was staying. Respondent-mother disputed that she had been offered substance abuse treatment housing and maintained that she had not denied such housing. Respondent-mother often stayed with her son but did not pay him rent and did not have her own room at his home.

During the dispositional portion of the hearing, the social worker testified that the children were in a "DSS foster home" and that there was not yet a particular adoptive family for the children, but there was a relative that "possibly would be interested in being eligible for adoption of the children." The social worker maintained that Durham County DSS would "do an intensive search for the children." The social worker further testified that in the beginning the children

> were both adamant about returning to their mother. [Sara]
> is a little older . . . But as the case has proceeded [Sara] has
> made a statement that she knows that her mother is not

able to care for her, and she's not able to care for herself; and she feels like it's her right to be able to have a stable environment and home; and, therefore, she would want to be adopted. The only caveat is that they ask if they could be adopted together.

The social worker testified that since Arya was younger, she was "back and forth to where she is . . . then she has come up with a lot of talking and a lot of therapy . . . and now she is moving towards . . . I don't want to live that lifestyle. I want to be able to . . . have a family. Have friends."

The attorney for the GAL told the trial court that the children "both have thoughts about their future and what that looks like. . . . They fully expressed that they would be willing to be adopted. But again, . . . you can't consent to an unknown. . . . [A]nd only some of their conversations expressed a real reservation with that."

In its written order entered 27 June 2025, the trial court concluded that grounds existed to terminate respondent-mother's parental rights under N.C.G.S. § 7B-1111(a)(1), (2), and (6). The trial court's factual findings about the initial adjudication stated that the Granville County trial court adjudicated the children as dependent and neglected. The trial court determined that termination of respondent-mother's parental rights was in the best interest of the children. Respondent-mother timely appealed.

## II. Jurisdiction

Appeal lies directly to this Court from "[a]ny order that terminates parental

rights or denies a petition or motion to terminate parental rights." N.C.G.S. § 7B-1001(a)(7) (2025).

### III. Standard of Review

"A termination of parental rights proceeding consists of an adjudicatory stage and a dispositional stage." *In re A.L.A.*, 379 N.C. 383, 386 (2021) (citation omitted). At the adjudicatory stage, the burden "is on the petitioner or movant to prove the facts justifying the termination by clear and convincing evidence." N.C.G.S. § 7B-1111(b) (2025); *see also In re Montgomery*, 311 N.C. 101, 109 (1984) ("It is well established that 'clear and convincing' and 'clear, cogent, and convincing' describe the same evidentiary standard."); *id.* § 7B-1109(f) (2025) (findings of fact at the adjudicatory stage "shall be based on clear and convincing evidence."). Findings of fact that are supported by clear and convincing evidence are "deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). Unchallenged findings of fact are binding on appeal. *In re L.C.*, 387 N.C. 475, 480 (2025). We review to determine whether findings of fact "support the conclusions of law." *In re B.R.L.*, 381 N.C. 56, 58 (2022). "In doing so, we limit our review to only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *Id.* (cleaned up). A trial court's conclusion that grounds exist to terminate parental rights is reviewed de novo. *In re L.C.*, 387 N.C. at 480.

"After an adjudication that one or more grounds for terminating a parent's

rights exist, the [trial] court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2025). "We review a trial court's determination that termination of parental rights is in the best interest of the child for an abuse of discretion." *In re T.M.*, 928 S.E.2d 508, 511 (N.C. Ct. App. 2026). "The trial court's dispositional findings are binding if they are supported by any competent evidence or if not specifically contested on appeal." *In re S.M.*, 380 N.C. 788, 791 (2022) (cleaned up).

## IV.    Discussion

Respondent-mother challenges the conclusion that grounds exist to terminate her parental rights and the determination that termination was in the best interest of the children. We address each argument in turn.

### A. Grounds for Termination

Respondent-mother argues that the trial court "erred by relying on an incorrect understanding of the stipulations, the findings, and the conclusions of the [Granville County trial court's] adjudication order to support the conclusion(s) that grounds to terminate [respondent-mother's] parental rights existed." Specifically, respondent-mother maintains that the trial court's order terminating her parental rights contains factual findings that state that the children were previously adjudicated neglected, but the Granville County trial court only adjudicated the children dependent. Therefore, respondent-mother argues these factual findings in the termination order "were not supported by the evidence[,]" create a

"misunderstanding" and in turn do not "support the conclusions that grounds existed to terminate [respondent-mother's] parental rights."

In addition to concluding that grounds existed to terminate under neglect and dependency, the trial court also concluded that grounds existed to terminate for willful failure to make progress towards correcting the conditions leading removal of the children while the children were out of her care for more than twelve months. The trial court made several findings that are unchallenged by respondent-mother to support this conclusion. "Because a finding of only one ground is necessary to support a termination of parental rights," *In re A.R.A.*, 373 N.C. 190, 194 (2019), we need only address one ground.

The trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2025). "The willfulness of a parent's failure to make reasonable progress toward correcting the conditions that led to a child's removal from the family home is established when the parent had the ability to show reasonable progress, but was unwilling to make the effort." *In re A.S.D.*, 378 N.C. 425, 428 (2021) (cleaned up).

Here, the trial court found that the children had been "in foster care or placements outside the home prior to the May 22, 2022 date pursuant to Court order"

and that the "placement has been for a period of over twelve months before the filing of the termination of parental rights petition on February 13, 2025." Finding of fact 40 extensively details that respondent-mother

> had the ability to complete court ordered services and services on the case plan but willfully failed or refused to do so. More specifically as follows:
>
> a. The Respondent Mother . . . was court ordered to complete a mental health and substance abuse assessment and follow all recommendations to alleviate the condition of instability for the children which led to the removal of the juveniles from the home. The Respondent Mother could complete this service as was demonstrated by her repeated enrollment in [therapy services] and inconsistent participation in services. The Respondent Mother originally presented for assessment at [the therapy servicer] in December 2022. At the time she was recommended for Peer Support Services ("PSS"), substance use focused Outpatient Therapy (OPT), and psychiatric medication management to include consideration of Suboxone. The Respondent Mother admits to having [various mental health diagnoses].
>
> b. At the beginning of her case planning, the Respondent Mother agreed to complete applications at the properties she is interested in due to waiting list. [Respondent-mother] and the clinical assessor discussed and reviewed her history of alcohol and substance abuse. [Respondent-mother] engaged and reviewed strategies of reducing relapses. [Respondent-mother] explained her history of [substance use]. [Respondent-mother] and the clinical assessor reviewed her relapse prevention plan. [Respondent-mother] stated that she will try to reconnect with OPT for med management. [Respondent-mother] was receptive to understanding the benefits and disadvantages of taking anti psychotropic. [Respondent-mother] agreed to keep

her recovery plan in mind and continue her efforts at getting clean. [Respondent-mother] and the clinical assessor scheduled [the] next meeting. Presently, [respondent-mother] has made no progress by not securing stable housing, reconnecting with OPT for med management, maintaining sobriety, securing stable source of income, following through with mental health outpatient therapy.

c. The Respondent Mother willfully failed and refused to complete the service.

The trial court also found that as of the termination hearing, respondent-mother had "not made reasonable progress under the circumstances to correct the conditions that led to the juveniles' removal in that no evidence was presented to the court demonstrating additional progress on any of the court ordered services." Based on these findings, the trial court concluded that grounds existed to terminate respondent-mother's parental rights based on her willful failure to make reasonable progress toward correcting the conditions leading to removal of the children.

These unchallenged findings detail respondent-mother's conduct after the Granville County trial court adjudicated the children dependent. They are supported by the trial court's previous permanency planning orders and by the Durham County DSS social worker's testimony at the termination hearing. They are not based on the trial court's misreading of the initial adjudication order or the allegations related to neglect. Indeed, these factual findings show that respondent-mother was ordered to engage in services to correct the conditions leading to the children's removal and had not done so. Accordingly, these factual findings were not based on a

misunderstanding about the initial adjudication but instead are supported by evidence before the trial court related to this ground for termination. Therefore, the trial court properly concluded that grounds existed to terminate respondent-mother's parental rights under N.C.G.S. § 7B-1111(a)(2), and because a finding of only one ground is necessary to terminate parental rights, we affirm the adjudication portion of the trial court's order.

## B. Disposition

Next, respondent-mother argues that the trial court abused its discretion in concluding that terminating her parental rights was in the children's best interest because it "did not consider the fact that Sara and Arya may never consent to adoption" and the "evidence did not support the determination that termination of [respondent-mother's] parental rights was in the best interest of Sara and Arya." Respondent-mother also challenges various dispositional findings.

"After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2025). In making this determination,

> the court shall consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

*Id.* In adoption proceedings, a child over the age of twelve must consent to adoption. N.C.G.S. § 48-3-601(1) (2025). However, even if a child over twelve does not consent to an adoption, a trial court may dispense with this requirement "upon a finding that it is not in the best interest of the minor to require the consent." *Id.* § 48-3-603(b)(2) (2025); *see also In re M.A.*, 374 N.C. 865, 880 (2020). The "absence of an adoptive placement for a juvenile at the time of the termination hearing is not a bar to terminating parental rights." *In re D.H.*, 232 N.C. App. 217, 223 (2014); *accord In re A.R.A.*, 373 N.C. at 200.

Here, the trial court found:

> 3. [Sara] is 15 years old. Termination would benefit [Sara] because she has been separated for 3.5 years and should have a permanent plan of care at the earliest possible age. Since [Sara] will reach majority in 2.5 years, obtaining permanency is a high priority. She generally is able to understand the consequences of termination.

> 4. [Arya] is 12 years old. Termination would benefit [Arya] because she has been separated for 3.5 years and should have a permanent plan of care at the earliest possible age. It would benefit [Arya] the opportunity to bond with guardians in a permanency result as she has bonded with

foster caretakers and a friend's mom over time.

5. The likelihood of adoption is possible. [Sara] and [Arya] crave to have a stable family life. They have demonstrated the ability to bond with adults when they are not made to feel guilty by their mother.

 . . . .

11. Juveniles Wishes: When asked, [Arya] has not expressed a placement wish. She mentioned she didn't like to think about the future because anxiety and fear something would go wrong. She understands going back to her mother or a family member are not options. When asked, [Sara] said she had nothing to add on her future placement. She understands going back to her mother or a family member are not options.

Respondent-mother maintains these findings are unsupported because the evidence indicated that Sara and Arya would not consent to adoption. However, these findings are supported by both the social worker's and GAL attorney statements to trial court that Sara and Arya wanted stable home life, Sara wanted to be adopted with sister, and both children "fully expressed that they would be willing to be adopted." Additionally, the 4 April 2025 GAL report stated that Arya was anxious about a future placement and indicated that her feelings might change if she addressed that anxiety. Accordingly, these findings are supported by competent evidence.

The trial further made findings about the ages of the children and that Sara and Arya were both able to form "appropriate parent-child" bonds. The trial court also found that the relationship between the children and respondent-mother did "not

have appropriate boundaries, parental guidance, or positive interactions. [Respondent-mother] over shares her health issues, makes the children feel guilty about caring for others and the children become overly concerned about their mother, which causes some acting out." As to "other relevant considerations" the trial court reiterated that respondent-mother had not made "meaningful progress towards reunification," citing her housing and income instability, and "unclear" management of her substance abuse history.

Respondent-mother "essentially ask[s] this Court to do something it lacks the authority to do—to reweigh the evidence and reach a different conclusion than the trial court." *In re A.J.T.*, 374 N.C. 504, 514 (2020). Based on the trial court's findings, which reflect thorough consideration of the statutory criteria and what Sara and Arya had expressed about adoption, its conclusion that termination of respondent-mother's parental rights was in the children's best interest did not constitute an abuse of discretion.

## V.    Conclusion

For the foregoing reasons, we affirm the trial court's order terminating respondent-mother's parental rights.

AFFIRMED.

Judges STROUD and HAMPSON concur.

Report per Rule 30(e).